UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ARCELORMITTAL TUBULAR PRODUCTS, MICHIGAN SEAMLESS TUBE, LLC, WEBCO INDUSTRIES, INC., AND ZEKELMAN INDUSTRIES, INC.,<br><br>                     Plaintiffs,<br><br>     v.<br><br>UNITED STATES,<br><br>                     Defendant. | Court No. 24-00039 |

## COMPLAINT

ArcelorMittal Tubular Products LLC, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc. (collectively, "Plaintiffs" or "Petitioners") through their attorneys, allege and state as follows:

## JURISDICTION

1.  Plaintiffs bring this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(i). This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Plaintiffs contest certain factual findings and legal conclusions in the final results of the United States Department of Commerce's ("Commerce" or "the Department") fourth annual administrative review of the antidumping duty order on <u>Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy</u> (Case No. A-475-838) covering the period of review ("POR") June 1, 2021, through May 31, 2022. The final results of the Department's review were published as <u>Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Final Results of Antidumping Duty Administrative Review; 2021-2022</u>, 89 Fed. Reg. 1523 (Dep't Commerce Jan. 10, 2024)

(hereinafter, "Final Results"), and the accompanying Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022 (Jan. 3, 2024) (hereinafter, "IDM").

## STANDARD OF REVIEW

2. The standard of review applicable in this action is whether the Department's determinations, findings, or conclusions are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Furthermore, this Court must hold as unlawful any decision by the Department which is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(A).

## STANDING OF PLAINTIFFS

3. Plaintiffs are U.S. producers of cold-drawn mechanical tubing of carbon and alloy steel, the domestic product that is like the product that was the subject of the challenged administrative review determination. Plaintiffs participated actively in the administrative review and are interested parties as described in section 771(9)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(C). As such, Plaintiffs have standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. The Final Results for the above-referenced administrative review were published in the Federal Register on January 10, 2024 (89 Fed. Reg. 1523).

5. This action was commenced by the filing of a: (1) Summons on February 9, 2024 (see ECF No. 1), which was filed within 30 days of publication of the Final Results; and (2) this Complaint, which is being filed within 30 days of the filing of the Summons. This action,

therefore, is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I), 28 U.S.C. § 2636(c) and Rule 3(a)(2) of the U.S. Court of International Trade.

## STATEMENT OF CLAIMS

6. The Department's Final Results constitute an abuse of discretion, are unsupported by substantial evidence on the record, and are otherwise contrary to law in the following respects:

## COUNT I

7. Paragraphs 1 through 6 above are re-alleged and incorporated herein by reference.

8. During the underlying administrative review, and prior to issuance of the preliminary results, Petitioners filed comments with the Department on June 1, 2023, arguing that mandatory respondent Dalmine S.p.A. ("Dalmine") should be collapsed and treated as a single entity with its Romanian affiliate, S.C. Silcotub S.A. ("Silcotub"). See Letter titled "Petitioners' Comments in Advance of the Department's Preliminary Results" (June 1, 2023) (hereinafter "Petitioners June 1 Comments"). Petitioners' June 1 Comments cited to five Department memoranda from prior agency cases in which the Department had considered collapsing entities under analogous facts. Id. at 2-16. Petitioners urged the Department to consider this precedent from prior cases in the upcoming preliminary results. Id. Petitioners had first raised the issue of collapsing Dalmine and Silcotub at the very start of the review process, in comments submitted to the Department on January 9, 2023. See Petitioners' Comments on Dalmine's Sections A-D Questionnaire Responses at 2-5 (Jan. 9, 2023).

9. The Department published the Preliminary Results on June 30, 2023, and did not address or mention Petitioners' pre-preliminary results comments nor the collapsing issue at all. See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022, 88 Fed. Reg. 43,281 (Dep't

-3-

Commerce July 7, 2023) (hereinafter, "Preliminary Results"), and accompanying Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022 (June 30, 2023) (hereinafter, "PDM"). Thereafter, the Department conducted on-site verification of Dalmine's data in July 2023.

10. On September 25, 2023, Petitioners filed a timely administrative case brief with the Department. See Petitioners' Case Brief (Sept. 25, 2023). Petitioners' case brief again urged the Department to conduct a collapsing analysis and cited the same five Department memoranda in support of their argument. Id. Indeed, the collapsing issue was the sole focus of Petitioners' brief. Id. Mandatory respondent Dalmine also filed a timely case brief. See Dalmine Case Brief (Sept. 25, 2023). Thereafter, both Petitioners and Dalmine filed timely rebuttal briefs. See Petitioners Rebuttal Brief (Oct. 2, 2023); Dalmine Rebuttal Brief (Oct. 2, 2023). Dalmine's rebuttal brief addressed Petitioners' collapsing argument and referred to certain of the Department memoranda from the prior cases cited in Petitioners' case brief. See Dalmine Rebuttal Brief at 2-7.

11. On December 8, 2023, over two months later and only three weeks before issuance of the Final Results, the Department rejected Petitioners' Case Brief. See Letter from the Department titled "Rejection of Petitioner's Case Brief" (Dec. 8, 2023). The Department claimed that the citations to prior agency memoranda contained in Petitioners' Case Brief constituted "new factual information" because those memoranda were not on the record of the underlying administrative review, and were untimely submitted in Petitioners' Case Brief after the record had closed. Id. at 2. The Department instructed Petitioners to redact the untimely factual information from their Case Brief and to refile the Case Brief. Id.

12. Compliant with the Department's instructions, Petitioners redacted the citations to and discussions of the memoranda and refiled their Case Brief on December 12, 2023. See Petitioners' Case Brief (refiled on Dec. 12, 2023). In addition, Petitioners filed a letter requesting reconsideration and withdrawal of the rejection of their Case Brief. See Letter titled "Petitioners' Request for Reconsideration of Rejection of Case Brief" (Dec. 12, 2023). Petitioners explained that the same discussion of the memoranda contained in the Case Brief was also contained in Petitioners' June 1, 2023 Comments, and therefore had already been on the record for the Department's consideration *for over six months*. Id. at 2-5. Accordingly, the memoranda citations were not new factual information.

13. On December 14, 2023, the Department issued another letter, this time rejecting both Petitioners' December 12 (re-filed) Case Brief and Petitioners' June 1 Comments. See Letter titled "Rejection of Petitioner's Submission" (Dec. 14, 2023). The Department claimed that Petitioners' June 1 Comments contained untimely new factual information in the form of citations to the five Department memoranda from prior cases because those memoranda were not placed on the underlying review record. Id. at 1-2. The Department also instructed Petitioners to remove references to those memoranda in the table of contents of their Case Brief. Id. at 2. The Department instructed Petitioners to remove all references to the memoranda in their Case Brief and June 1 Comments, and to then re-file both documents with the agency. Id.

14. On December 18, 2023, as instructed, Petitioners refiled both their Case Brief and June 1 Comments with all references to the memoranda redacted to comply with the Department's instructions. Also on December 18, Petitioners filed a second request for reconsideration and withdrawal of the rejection of their Case Brief and June 1 Comments. See Letter titled "Petitioners' Second Request for Reconsideration of Rejection of Case Brief and

Pre-Preliminary Results Comments" (Dec. 18, 2023). Petitioners explained that the citation to and discussions of prior agency memoranda had been on the record for over six months, since before the Preliminary Results, thereby affording the Department ample time to consider them. Id. at 8-11. Petitioners also explained that, as a legal matter, citations to prior agency memoranda are not "factual information" within the meaning of the Department's regulations. Id. Indeed, the Department's regulations at 19 C.F.R. § 351.102(b)(21) define five, enumerated types of "factual information," none of which includes agency decision memoranda from past cases. It is telling that while the Department's two rejection letters cite to 19 C.F.R. § 351.102(b)(21) generally, neither states which of the five categories the Department is claiming applies here to agency memoranda. Id. at 3-6. Petitioners also explained that decision memoranda from prior agency decisions, by their very nature, are not factual information but reflect agency rationale for a determination. Id. Indeed, the five memoranda Petitioners cited were explicitly cited to and incorporated by reference into the preliminary and final decision memoranda in each prior decision, thereby forming the basis of the agency's decision-making and constituting agency precedent. Id.

15.   Petitioners' December 18 Letter also requested a meeting with Department officials. Id. at 2. The Department granted Petitioners' request and held a virtual meeting on December 20 with Petitioners' counsel and agency officials. See Memorandum to the File, Teleconference with the Petitioners (Dec. 20, 2023). During the meeting, Petitioners' counsel discussed all the legal and factual arguments contained in their December 12 and December 18 Letters, and urged the Department to reconsider and withdraw the rejection of Petitioners' case brief and June 1 comments. Id.

16. Two weeks later, the Department issued the Final Results, which were then published on January 10, 2024. Neither the Final Results nor the IDM addresses any of the legal and factual arguments Petitioners raised in their letters and at the December 20 meeting regarding rejection of their Case Brief and June 1 Comments. The Department cited no agency policy nor specific regulatory provision to justify the rejection of Petitioners' case brief and comments. The only mention of the issue states that "{b}ecause the petitioners' initial case brief contained untimely new factual information (NFI), we rejected it from the record and allowed petitioners to refile it without the NFI, which they did." See IDM at 2, n.5. The Department was otherwise silent on this issue.

17. The Department's identification of the five memoranda underlying prior Department decisions as "new factual information" and the rejection of those citations from Petitioners' Case Brief and June 1 Comments is unsupported by substantial evidence, not in accordance with law, and was an abuse of discretion.

## COUNT II

18. Paragraphs 1 through 17 above are re-alleged and incorporated herein by reference.

19. The Department's practice of collapsing affiliated producers is codified in 19 C.F.R. § 351.401(f), which provides that the Department will treat two or more affiliated producers as a single entity when those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities, and if the Department concludes that there is significant potential for manipulation of price or production. During the administrative review, Petitioners argued that Dalmine should be collapsed with its affiliate Silcotub. The Department did not address this argument in its preliminary results. See Preliminary Results and PDM. In its Final

Results, the Department found that the two entities are affiliated, but determined not to treat them as collapsed entities. See IDM at 5-9 (Comment 1).

20. The Department determined not to collapse Dalmine and Silcotub because it concluded that two of the three collapsing criteria were not satisfied. See IDM at 5-9 (Comment 1). The Department acknowledged that Dalmine and Silcotub are affiliated entities, and as such, the first criterion is satisfied. Id. With respect to the second criterion, i.e., whether the producers have production facilities for producing similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities, the Department misconstrued the regulation. The Department explained that Silcotub is not a producer of subject merchandise and does not have the ability to produce subject merchandise through minor alterations to its facilities. Id. The Department went on to explain that because Silcotub's production operations are based in Romania, even if the Department were to treat Dalmine and Silcotub as a single entity, any subject merchandise produced in Romania would not be subject to the proceeding. Id. The Department's analysis wrongly focused on whether Silcotub is a producer of subject merchandise, i.e., merchandise produced in Italy. The correct inquiry was not whether the affiliated entities are producers of the subject merchandise, but whether the entities are producers that have production facilities for producing similar or identical products that would not require substantial retooling of either facility. The Department failed to conduct the correct analysis with respect to the second criterion.

21. With respect to the third criterion, i.e., whether there is significant potential for manipulation of price or production, the Department's regulations at 19 C.F.R. § 351.401(f)(2) explain the three factors that it will evaluate: (i) level of common ownership; (ii) overlap in managerial employees; and (iii) whether the operations of the entities are intertwined, such as

through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers. In its Final Results, the Department acknowledged that Dalmine and Silcotub are wholly owned by the same company and that they have significant transactions between them related to the production and sale of subject merchandise. Id. As such, the Department found that two of the three factors with respect to the third criterion were satisfied. Despite this finding, the Department determined that "the potential for manipulation of price does not currently exist because: (1) Silcotub does not export, to the United States, Italian cold-drawn mechanical tubing produced by any other company than Dalmine; (2) Dalmine has fully reported Silcotub's downstream sales of Dalmine's cold-drawn mechanical tubing in its U.S. sales database, as required by section 772 of the Act; and (3) Silcotub does not have its own cash deposit rate (thereby creating the potential for the companies to export under the more advantageous of the two rates)." Id. Despite finding that two of the three factors it evaluates with respect to the third criterion for collapsing were indeed satisfied, the Department determined that the third criterion had not been met.

22.     The Department also imposed a heightened standard in its collapsing analysis that is not supported by the regulatory language. Despite finding several of the above criterion satisfied, the Department concluded "we disagree with the petitioners that it is ***necessary*** to collapse these companies, pursuant to 19 CFR 351.401(f), for purposes of these final results." IDM at 7 (emphasis added). The relevant inquiry before the Department was not whether it was "necessary" to collapse Dalmine and Silcotub, but whether the regulatory factors supporting collapsing are satisfied. Indeed, the regulation states that the Department "***will*** treat two or more producers as single entity" when the regulatory factors are present. 19 C.F.R. § 351.401(f)(1)

(emphasis added).  By declining to collapse Dalmine and Silcotub because it was not "necessary," the Department applied the wrong regulatory standard in the <u>Final Results</u>.

23.    Moreover, the Department's rejection of the memoranda citations discussed in Count I deprived the agency of consideration of numerous past cases with similar facts that supported collapsing Dalmine and Silcotub.  The memoranda demonstrate that the Department has previously collapsed respondents with affiliates who were not engaged in the production of subject merchandise.  The memoranda also demonstrate that the Department has previously collapsed respondents with affiliates when the entities shared sales information and when there were significant transactions between them.  Furthermore, the memoranda demonstrate that the Department has previously collapsed affiliated entities despite finding no overlap in managerial employees.

24.    The Department's improper rejection and removal from the record of any references to and citation of the various Department affiliation and collapsing memoranda significantly impeded Petitioners' ability to support their argument by citing to Department practice and policy.  Had the Department correctly conducted the analyses for the second and third criteria for collapsing, and considered the agency precedent Petitioners cited, it should have concluded that the requirements for collapsing Dalmine and Silcotub are satisfied.  The Department's decision not to collapse Dalmine and Silcotub conflicts with precedent in numerous prior cases in which, as summarized above, the Department did collapse affiliated entities when presented with similar facts.

25.    As a result, the Department's <u>Final Results</u> are unsupported by substantial evidence and are not in accordance with law.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Hold that the Department's <u>Final Results</u> are not supported by substantial evidence, are otherwise not in accordance with law, and constitute an abuse of discretion with respect to the claims advanced by Plaintiffs in this Complaint;

(b) Remand the <u>Final Results</u> to the Department with instructions to correct the errors set forth in this Complaint; and

(c) Provide such relief as this Court deems just and appropriate.

                                                            Respectfully submitted,

                                                            <u>/s/ Melissa M. Brewer</u>
R. ALAN LUBERDA
MELISSA M. BREWER
MALIHA KHAN
aluberda@kelleydrye.com
mbrewer@kelleydrye.com
mkhan@kelleydrye.com
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8807

Counsel to Plaintiffs ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc.

Dated: March 7, 2024

## CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES

### ArcelorMittal Tubular Products, et al. v. United States
### CIT Court No. 24-00039

Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I certify that on March 7, 2024, copies of the foregoing Complaint were served upon the following individuals and notified all the interested parties who were a party to the proceeding below, by certified or registered mail, return receipt requested:

**UPON THE UNITED STATES**

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278-0001

Director, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W., Room 12124
Washington, DC 20530


**UPON THE U.S. DEPARTMENT OF COMMERCE**

General Counsel
U.S. Department of Commerce
14th Street & Constitution Avenue, N.W.
Washington, DC 20230

Ms. Evangeline Keenan, Esq.
Director, APO/Dockets Unit
U.S. Department of Commerce
14th Street & Constitution Avenue, N.W.
Room 1874
Washington, DC 20230

-2-

**On behalf of Dalmine S.p.A.**
Kristina Zissis, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Email: kzissis@whitecase.com

**On behalf of European Commission**
Caitlin Hickey
Delegation of the European Union
2175 K St NW
Washington DC 20037
Email: caitlin.hickey@eeas.europa.eu

/s/ Melissa M. Brewer
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP