## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| ARCELORMITTAL TUBULAR PRODUCTS; MICHIGAN SEAMLESS TUBE, LLC; WEBCO INDUSTRIES, INC.; AND ZEKELMAN INDUSTRIES, INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 24-00039 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| DALMINE S.p.A., | ) ) | |
| Defendant Intervenor. | ) ) | |

## ORDER

Upon consideration of the Rule 56.2 motion of Plaintiffs ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc., all responses thereto, and all other relevant papers and proceedings herein, it is hereby:

**ORDERED** Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record is granted; and it is further

**ORDERED** that the U.S. Department of Commerce's final results set forth in *Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 1,523 (Dep't Commerce Jan. 10, 2024), is remanded for disposition in a manner consistent with the judgment of this Court; and it is further

**ORDERED** that the U.S. Department of Commerce will withdraw its rejection of Plaintiffs' affirmative case brief and June 1, 2023 comments filed in advance of the preliminary results; and it is further

**ORDERED** that the U.S. Department of Commerce will reconsider its factual finding that it was not necessary to collapse mandatory respondent Dalmine S.p.A. with its Romanian affiliate, S.C. Silcotub S.A., so as to render a decision that is supported by substantial evidence and otherwise in accordance with law.

**SO ORDERED**.

Date: _____        _____
            New York, NY                                M. Miller Baker, Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ARCELORMITTAL TUBULAR PRODUCTS; MICHIGAN SEAMLESS TUBE, LLC; WEBCO INDUSTRIES, INC.; AND ZEKELMAN INDUSTRIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> DALMINE S.p.A., <br><br> Defendant Intervenor. | Court No. 24-00039 |

**Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiffs ArcelorMittal Tubular Products LLC, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc., respectfully move for judgment upon the agency record in the above-referenced action. For the reasons set forth in the

Memorandum of Law of in Support of Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record, Plaintiffs request that this Court hold that the final results by the U.S. Department of Commerce, as set forth in *Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 1,523 (Dep't Commerce Jan. 10, 2024), are unsupported by substantial evidence and are otherwise not in accordance with law. Plaintiffs, therefore, move that this Court remand the U.S. Department of Commerce's final results to the agency for disposition in a manner consistent with the judgment of the Court.

Respectfully submitted,

/s/ Melissa M. Brewer
R. ALAN LUBERDA
MELISSA M. BREWER
MALIHA KHAN
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, D.C.   20007
(202) 342-8807

Counsel to Plaintiffs ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc.

Dated: July 19, 2024

NONCONFIDENTIAL

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| ARCELORMITTAL TUBULAR PRODUCTS; MICHIGAN SEAMLESS TUBE, LLC; WEBCO INDUSTRIES, INC.; AND ZEKELMAN INDUSTRIES, INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 24-00039 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| DALMINE S.p.A., | ) ) | |
| Defendant Intervenor. | ) ) | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

R. ALAN LUBERDA
MELISSA M. BREWER
MALIHA KHAN
Kelley Drye & Warren LLP

Counsel to Plaintiffs

Dated: July 19, 2024

NONCONFIDENTIAL

# Table of Contents

Page

I.    THE FINAL RESULTS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE THE DEPARTMENT FAILED TO PROVIDE ANY RATIONALE FOR REJECTING PETITIONERS' SUBMISSIONS ................................................................. 25

II.    THE DEPARTMENT'S MISCLASSIFICATION OF AGENCY DECISION MEMORANDA AS "FACTUAL INFORMATION" IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, IS OTHERWISE NOT IN ACCORDANCE WITH LAW, AND CONSTITUTES AN ABUSE OF DISCRETION ....................................... 35

  A.    The Department's Regulations Codify Five Specific Types of Factual Information, None of Which Applies To Agency Memoranda from Prior Cases .................................................................... 35

  B.    The Rejected Agency Memoranda Were Incorporated by Reference Into the Decision Memoranda and Federal Register Notices in Those Cases Precisely Because They Provided Agency Rationale .................................................. 43

  C.    The Department Has Never Articulated a Policy of Treating Certain Agency Memoranda as "Factual Information" .......................................... 47

  D.    The Department's Failure to Raise the Issue of Alleged New Factual Information in Plaintiffs' Filings Until Late in the Review Was Unreasonable ........................................................ 49

NONCONFIDENTIAL

## Table of Contents
### (continued)

Page

III.  THE DEPARTMENT'S FAILURE TO TREAT
DALMINE AND SILCOTUB AS A SINGLE ENTITY
IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.............54

  A.  Record Evidence Demonstrates Dalmine and
Silcotub Have Production Facilities for Similar or
Identical Products That Would Not Require
Substantial Retooling of Either Facility in Order
to Restructure Manufacturing Priorities.............................59

  B.  Record Evidence Demonstrated a Significant
Potential for Manipulation of Price or Production...............63

    1.  Level of Common Ownership.......................................65

    2.  Managerial Overlap.....................................................65

    3.  Whether Operations Are Intertwined.........................68

CONCLUSION.........................................................................................74

NONCONFIDENTIAL

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Altx, Inc. v. United States,*
370 F.3d 1108 (Fed. Cir. 2004) .......................................................... 33

*Am. Farm Lines v. Black Ball Freight Serv.,*
397 U.S. 532 (1970) ............................................................................. 41

*Bonney Forge Corp. v. United States,*
560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022)............................... *passim*

*Consol. Bearings Co. v. United States,*
412 F.3d 1266 (Fed. Cir. 2005) ..................................................... 42-43

*CP Kelco U.S., Inc. v. United States,*
949 F.3d 1348 (Fed. Cir. 2020) .......................................................... 27

*CP Kelco US, Inc. v. United States,*
211 F. Supp. 3d 1338 (Ct. Int'l Trade 2017)................................. 48-49

*CS Wind Vietnam Co. v. United States,*
832 F.3d 1367 (Fed. Cir. 2016) ..................................................... 27-28

*Goodluck India Ltd. v. United States,*
11 F.4th 1335 (Fed. Cir. 2021)..................................................... 40, 41

*Goodluck India Ltd. v. United States,*
670 F. Supp. 3d 1353 (Ct. Int'l Trade 2023)............................... 41, 58

*Husteel Co. v. United States,*
491 F. Supp. 2d 1283 (Ct. Int'l Trade 2007)................................. 9, 34

*Huvis Corp. v. United States,*
525 F. Supp. 2d 1370 (Ct. Int'l Trade 2007), *aff'd upon*
*remand,* 570 F.3d 1347 (Fed. Cir. 2009)........................................ 9, 41

*Jiangsu Zhongji Lamination Materials Co. v. United States,*
625 F. Supp. 3d 1355 (Ct. Int'l Trade 2023)....................................... 53

NONCONFIDENTIAL

*Motor Vehicle Ass'n v. State Farm Mut.*,
    463 U.S. 29 (1983) ............................................................... 9, 34

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ............................................. 9

*In re Section 301 Cases*,
    570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022)........................... 26, 48, 58

*Star Fruits S.N.C. v. United States*,
    393 F.3d 1277 (Fed. Cir. 2005) ............................................. 10

*Suramerica de Aleaciones Laminadas, C.A. v. United States*,
    44 F.3d 978 (Fed. Cir. 1994) ................................................. 8

*U.H.F.C. v. United States*,
    916 F.2d 689 (Fed. Cir. 1990) ............................................... 26

## Statutes and Regulations

19 U.S.C. § 1516(b)(1)(B)(i) ...................................................... 8

19 U.S.C. § 1516a(b)(1)(A)......................................................... 10

19 U.S.C. § 1516a(b)(1)(B)(i) ..................................................... 33

19 C.F.R. § 351.309(c)............................................................... 17, 52

19 C.F.R. § 351.102(b)(21) ......................................................... 36

19 C.F.R. § 351.102(b)(21)(i) ...................................................... 37

19 C.F.R. § 351.102(b)(21)(ii) ..................................................... 38

19 C.F.R. § 351.102(b)(21)(iii) .................................................... 38

19 C.F.R. § 351.102(b)(21)(iv) ..................................................... 38

19 C.F.R. § 351.102(b)(21)(v)...................................................... 38

19 C.F.R. § 351.301 ................................................................... 4, 30, 37, 45

iv

NONCONFIDENTIAL

19 C.F.R. § 351.301(c)..................................................................... 15, 50, 51

19 C.F.R. § 351.301(c)(5) .......................................................... 15, 46, 51

19 C.F.R. § 351.309(c) ..................................................................... 17, 52

19 C.F.R. § 351.401(f) .........................................................................55-56

19 C.F.R. § 351.401(f)(1) ..........................................................................59

19 C.F.R. § 351.401(f)(2)(i) ......................................................................65

19 C.F.R. § 351.401(f)(2)(ii) .....................................................................65

19 C.F.R. § 351.401(f)(2)(iii) ...................................................................68

## Adminsitrative Determinations

*Antidumping Duties; Countervailing Duties: Final Rule*,
    62 Fed. Reg. 27,296 (Dep't Commerce May 19, 1997)
    ("*Preamble*") ............................................................ 56, 57, 64

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy
    Steel From Italy: Final Results of Antidumping Duty
    Administrative Review; 2021-2022*, 89 Fed. Reg. 1,523
    (Dep't Commerce Jan. 10, 2024) ("*Final Results*")................... *passim*

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy
    Steel From Italy: Preliminary Results of Antidumping
    Duty Administrative Review; 2021-2022*, 88 Fed. Reg.
    43,281 (Dep't Commerce July 7, 2023) ("*Preliminary
    Results*") ........................................................................... 16

*Decision Memorandum for the Preliminary Results of the
    2018- 2019 Antidumping Duty Administrative Review of
    Crystalline Silicon Photovoltaic Cells, Whether or not
    Assembled into Modules, From the People's Republic of
    China* (Apr. 16, 2021) ................................................43-44

NONCONFIDENTIAL

*Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022* (June 30, 2023) ....................... 16, 17

*Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Mexico; 2020-2021* (Nov. 30, 2022) ................................................................. 43-44

*Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Seamless Refined Copper Pipe and Tube from the Socialist Republic of Vietnam* (Jan. 26, 2021) ............................................. 43-44

*Definition of Factual Information and Time Limits for Submission of Factual Information, Final Rule*, 78 Fed. Reg. 21,246 (Dep't Commerce May 10, 2013) .............................. 38, 39

*Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022* (Dep't Commerce Jan. 3, 2024) ("*IDM*") ............................................................ *passim*

*Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Common Alloy Aluminum Sheet from the People's Republic of China; 2018-2020* (Dec. 22, 2021) .............................. 43-44

*Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order* (Apr. 6, 2023) ................................................................ 43-44

**NONCONFIDENTIAL**

On behalf of ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc. (collectively, "Plaintiffs" or "Petitioners"), we submit this Memorandum of Law in support of Plaintiffs' Motion for Judgment Upon the Agency Record. Plaintiffs urge this Court to determine that certain aspects of the U.S. Department of Commerce's (the "Department" or "Commerce") final results in the fourth administrative review of the antidumping duty order on certain cold-drawn mechanical tubing of carbon and alloy steel from Italy are not supported by substantial evidence and are not otherwise in accordance with law, and to remand the agency's determination for further proceedings.

## Administrative Determination Under Review

Plaintiffs challenge certain aspects of the Department's final results in the fourth administrative review of the antidumping duty order on certain cold-drawn mechanical tubing of carbon and alloy steel from Italy. *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 1,523 (Dep't Commerce Jan. 10, 2024) ("*Final Results*") (Appx1012-1013) and the accompanying Memorandum

NONCONFIDENTIAL

from USDOC Re: *Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022* (Dep't Commerce Jan. 3, 2024) ("*IDM*") (Appx1000-1011).

### Issues Presented and Summary of Argument

Plaintiffs challenge three aspects of the Department's *Final Results*.

1) **Is the Department's failure to provide a reasoned basis for its rejection of Plaintiffs' citations to Department affiliation and collapsing memoranda in other proceedings cited as reflecting the Department's established practice supported by substantial evidence?**

No. In the *Final Results*, the Department was completely silent regarding its reasons for rejecting the citations in Plaintiffs' case brief and pre-preliminary results comments, and failed to address the legal and factual arguments raised by Plaintiffs that those cases support. In the letters rejecting Plaintiffs' filings, the Department deemed those citations and the discussions of those cases as untimely submitted factual information, but failed to identify under which of the five categories of factual information within 19 C.F.R. § 351.102(b)(21) it

claims affiliation and collapsing memoranda belong. Instead, the
Department cited only the general provision of 19 C.F.R.
§ 351.102(b)(21) when rejecting Plaintiffs' submissions, and pointed to
none of the specific categories of factual information as applicable to
agency memoranda. Because the Department failed to provide any
explanation for its decision to reject Plaintiffs' submissions, that
decision is not supported by substantial evidence.

> **2)  Is the Department's treatment of agency affiliation and collapsing memoranda from other proceedings as "factual information" pursuant to 19 C.F.R. § 351.102(b)(21) and resulting rejection of Plaintiffs' citations to affiliation and collapsing memoranda unsupported by substantial evidence, not otherwise in accordance with law, and an abuse of discretion?**

Yes. The Department's treatment of agency affiliation and collapsing
memoranda from other proceedings as "factual information" and
resulting rejection of Plaintiffs' submissions is not supported by
substantial evidence, not in accordance with law, and constitutes an
abuse of discretion. The Department's regulations identify five
categories of factual information, none of which apply to agency decision
memoranda from prior cases. Like preliminary and final decision
memoranda, affiliation and collapsing memoranda do not constitute

NONCONFIDENTIAL

"factual information," but instead provide an explanation of the agency's rationale underlying its previous decisions. These memoranda form the very basis for the Department's policies and practices and, therefore, may be cited as demonstrative of agency practice. Moreover, these memoranda are specifically incorporated by reference into the Department's decision memoranda and *Federal Register* notices – neither of which are treated as factual information under 19 C.F.R. § 351.102(b)(21). This reinforces that affiliation and collapsing memoranda constitute agency rationale and not factual information, the submission of which is subject to timing constraints under 19 C.F.R. § 351.301.

Furthermore, the Department never identified the category of factual information under which it claims affiliation and collapsing memoranda fall, and instead alleged that Plaintiffs had failed to identify the category of factual information which applied. The Department presumably did not identify the category of factual information under § 351.102(b)(21) for the same reason Plaintiffs did not -- because these memoranda do not meet any of the five definitions of "factual information" under the regulations. The Department's treatment of

NONCONFIDENTIAL

affiliation and collapsing memoranda as "factual information" is inconsistent with the plain language of the agency's regulations at § 351.102(b)(21). None of the five definitions of factual information in that section apply to any type of agency decision memoranda. Because the Department failed to adequately explain its rationale for classifying agency collapsing and affiliation memoranda as "factual information," its decision is not supported by substantial evidence. Moreover, because the Department's classification of agency affiliation and collapsing memoranda as "factual information" is not supported by substantial evidence and is based on an erroneous interpretation of law, the Department's rejection of Petitioners' submissions for citing those memoranda constitutes an abuse of discretion.

Finally, the Department waited many months, until December 2023, to reject Petitioners' pre-preliminary results comments (submitted in June 2023) and administrative case brief (submitted in September 2023). The Department's rejection of Plaintiffs' submissions less than one month before issuance of the final results was unreasonable given that the submissions had been on the record for several months before the Department raised any issue. Furthermore, the Department cited

no policy or practice of treating agency affiliation and collapsing memoranda from other proceedings as factual information.

### 3) Is the Department's failure to treat Dalmine and Silcotub as a single entity supported by substantial evidence?

No. The Department's failure to treat mandatory respondent Dalmine S.p.A. ("Dalmine") and its Romanian affiliate, S.C. Silcotub S.A. ("Silcotub") as a single entity is not supported by substantial evidence. The Department's collapsing analysis is incomplete and inconsistent with agency precedent that Petitioners cited, and the Department ignored and ordered be stripped from the record. After rejecting Plaintiffs' citations to similar prior cases, the Department determined not to collapse Dalmine and Silcotub, despite recognizing that certain regulatory factors were met, because: (i) it did not consider Silcotub to be a producer of subject merchandise or a producer that has the ability to produce such merchandise through minor alterations to its facilities; (ii) it did not find evidence of the potential for significant manipulation of price or production; (iii) it did not find evidence of managerial overlap between Dalmine and Silcotub; and (iv) it did not

NONCONFIDENTIAL

find evidence that the operations of Dalmine and Silcotub are intertwined through the sharing of facilities or employees.

With respect to the first issue, the Department incorrectly focused on whether Silcotub is a producer of subject merchandise instead of whether Dalmine and Silcotub are producers that have production facilities for producing similar or identical products through minor alterations to their facilities. With respect to the second issue, the Department failed to consider the potential of future manipulation of price or production under 19 C.F.R. § 351.401(f)(2). With respect to the third issue, the Department incorrectly relied on a finding of no evidence of managerial overlap between Dalmine and Silcotub as support for its decision that the potential for manipulation of price or production does not exist. With respect to the fourth issue, the Department ignored record evidence demonstrating that the operations of Dalmine and Silcotub are intertwined through the sharing of facilities or employees. Additionally, the Department failed to consider the other two elements listed under 19 C.F.R. § 351.401(f)(2)(iii). On the whole, the Department failed to conduct the correct analysis and ignored agency precedent on this issue and each factor cited by wrongly

NONCONFIDENTIAL

rejecting and removing Petitioners' submissions and citations from the record.

Consequently, the Department's decision not to collapse Dalmine and Silcotub in its *Final Results* is not supported by substantial evidence. Had the Department considered the cases cited by Petitioners, it should have reached a different conclusion based on the practice set out in those cases. Because the Department's decision is inconsistent with prior agency decisions and the Department failed to provide a reasoned justification for its departure from agency precedent, the Department's decision is arbitrary and capricious.

## Standard of Review

This Court must hold unlawful any aspect of the Department's final determination that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516(b)(1)(B)(i). Substantial evidence means "'more than a mere scintilla'" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

NONCONFIDENTIAL

In determining whether substantial evidence exists, the Court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Atl. Sugar. Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

The standard also requires the Department to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983); *see also Husteel Co. v. United States*, 491 F. Supp. 2d 1283, 1291-93 (Ct. Int'l Trade 2007) (finding the agency's determination unsupported by substantial evidence because the agency "did not provide a reasoned explanation supported by a stated connection between the facts found and the choices made . . . .") (citation omitted)).

In addition, the Court will find the Department's action to be not in accordance with law when that decision is contrary to statute, regulation, precedent, or procedures. *Huvis Corp. v. United States*, 525 F. Supp. 2d 1370, 1374 (Ct. Int'l Trade 2007), *aff'd upon remand*, 570

NONCONFIDENTIAL

F.3d 1347 (Fed. Cir. 2009). This Court must hold as unlawful any decision by the Department which is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(A). An abuse of discretion "occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

## Statement of Facts

The Department initiated its fourth administrative review of the antidumping duty order on certain cold-drawn mechanical tubing ("tubing") of carbon and alloy steel from Italy on August 9, 2022. Appx7236-7241. Based on requests by Petitioners and Dalmine, the Department selected Dalmine as the sole mandatory respondent in the review and on August 26, 2022, the Department issued its initial questionnaire to Dalmine. Appx7257-7439.

Dalmine submitted responses on behalf of itself as well as its affiliated U.S. importer Tenaris Global Services. Appx1016. In its initial response to Section A of the Department's questionnaire, Dalmine

-10-

explained that its U.S. sales included subject merchandise produced by Dalmine shipped from Italy to the United States as well as subject merchandise that was produced by Dalmine, sold to Dalmine's affiliate in Romania, Silcotub, cut by Silcotub, and shipped from Romania to the United States. Appx1025. In that response, Dalmine also explained that during the period of review, Silcotub produced hollows in Romania and sold them to Dalmine to produce subject tubing in Italy. Appx1030. In its initial response to Section D of the Department's questionnaire, Dalmine further explained that Silcotub is one of its sources for the hollows (*i.e.*, blank pipes) used in the production of subject merchandise in Italy and that Silcotub produced these hollows in Romania. Appx2946.

After Dalmine filed its initial questionnaire response, Petitioners filed comments urging the Department to gather additional information from both Dalmine and its affiliate Silcotub and to consider whether to treat the two companies as a single entity. Appx3237-3260. Whether two affiliated companies are "collapsed" and treated as a single entity has a significant bearing on how each company's costs are assessed and treated by the Department. Petitioners pointed to information in

NONCONFIDENTIAL

Dalmine's Section A response that indicated a high level of operational integration between the two companies, for example, Dalmine reported that from "an operational point of view, the Tenaris Groups companies, including Dalmine, Silcotub, TGS Uraguay, and TGS USA act like an integrated company using consolidated software, such as SAP, and procedures." Appx3288. In addition, Dalmine had reported:

Silcotub   has   a   [



]  At  [



]   The  [

]

Appx3239. Petitioners explained that this evidence indicated that the production facilities of Dalmine and its affiliate Silcotub are [                                                                                    ] *Id.* Dalmine further reported that the "Steel Shop and Hot Rolling Mill in Dalmine's facility in Dalmine, Italy produces [                         ] of blank pipes (i.e., hollows) supplied to Costa Volpino. . . {and} the remainder of

NONCONFIDENTIAL

the hollows used as an input to produce {tubing} in Costa Volpino is purchased from the affiliated Romanian company Silcotub." *Id.* In light of this initial reporting and evidence, Petitioners urged the Department to require Dalmine to "report all of Silcotub's costs and sales as a collapsed entity." Appx3240-3241. Petitioners also explained that because Silcotub operates with Dalmine as "an integrated company," Dalmine should fully report its costs for the hollows that it purchased from Silcotub and used in the production of subject merchandise. *Id.*

While the Department did issue supplemental questionnaires to Dalmine prior to the preliminary results, it failed to request this additional cost of production information for Silcotub. Appx3261-3266; Appx3502-3507; Appx3644-3650; Appx3895-3898.

Prior to the preliminary results, in comments submitted on June 1, 2023, Petitioners again urged the Department to treat Dalmine and Silcotub as a single entity based on the record evidence that supported a collapsing finding. Appx3874-3894. As further legal support for a collapsing determination, Petitioners' June 1 Comments cited to five Department memoranda from recent agency cases in which the Department had considered collapsing entities under analogous facts.

-13-

Appx3875-3889.[1] Petitioners urged the Department to consider these

prior cases in the upcoming preliminary results given their relevance to

the underlying proceeding.[2] *Id.* Petitioners' June 1 Comments also

requested that the Department issue a supplemental questionnaire to

Dalmine after the preliminary results and in advance of the

Department's scheduled verification in Italy, instructing Dalmine to

report Silcotub's cost of production for the hollows transferred to

Dalmine. Appx3889.

---

[1]    Although the Department ultimately rejected this submission and required Petitioners to remove all citations to and discussion of those cases, the Department's rejection letter lists the names of the five cases to which Petitioners cited: (1) Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Circumvention Inquiry – Preliminary Affiliation and Collapsing Memorandum," dated April 6, 2023; (2) Crystalline Silicon Photovoltaic Cells, Whether or not Assembled into Modules, from the People's Republic of China: Affiliation and Collapsing Memorandum for Jinko Solar Import and Export Co., Ltd.," dated April 16, 2021; (3) Common Alloy Aluminum Sheet from the People's Republic of China: Final Affiliation and Collapsing Memorandum," dated December 22, 2021; (4) Seamless Refined Copper Pipe and Tube from the Socialist Republic of Vietnam: Affiliation and Single Entity Treatment Memorandum," dated January 26, 2021; (5) Steel Concrete Reinforcing Bar from Mexico; 2017-2018 Affiliation and Collapsing Memorandum for Grupo Simec," dated January 9, 2020. Appx7550-7551.

[2]    Petitioners did not include copies of the five Department memoranda as attachments to the June 1 Comments, or to the earlier comments filed on January 9, 2023, given that there was no announced requirement by the Department at the time to do so. Moreover, those memoranda, like any other decision memoranda on which the Department routinely relies, were readily available on the Department's ACCESS website.

Relevant are the Department's regulations that contain a provision with time limits for the submission of factual information, including factual information defined under 19 C.F.R. § 351.102(b). *See* 19 C.F.R. § 351.301(c). Section 351.301(c)(5), for example, governs factual information not described in § 351.102(b)(21)(i)-(iv) and therefore falling in the catch-all provision of § 351.102(b)(21)(v). The Department never identified any specific subsection under which it believes prior agency memoranda belong, either under § 351.102(b)(21) or § 351.301(c). Nevertheless, assuming the fifth "catch all" provision is the one the Department believes applies to the fie memoranda, the Department was required to take certain actions:

> (1) Upon receipt of factual information under this subsection, the Secretary will issue a memorandum accepting or rejecting the information and, to the extent practicable, will provide written notice stating the reasons for rejection.
>
> (2) If the Secretary accepts the information, the Secretary will issue a schedule providing deadlines for submission of factual information to rebut, clarify or correct the factual information.

19 C.F.R. § 351.301(c)(5). The Department did not reject the June 1 submission "upon receipt" and did not issue a written notice of rejection

NONCONFIDENTIAL

with reasons for the rejection, something the Department was obliged to do if the citations to the memoranda were actually factual information governed by §§ 351.102(b)(21) and 351.301(c). Nor did Dalmine, the only other interested party that participated in the review, object to Petitioners' submission as either untimely or an improper submission of factual information.

The Department published its *Preliminary Results* on June 30, 2023. *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 43,281 (Dep't Commerce July 7, 2023) (hereinafter, "*Preliminary Results*") (Appx7522-7524), and accompanying *Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022* (June 30, 2023) (Appx7503-7521). In the *Preliminary Results*, the Department treated Dalmine and Silcotub as separate entities for purposes of calculating the dumping margin, and did not address or otherwise mention Petitioners' argument to collapse the two companies, the extensive record evidence supporting a collapsing

NONCONFIDENTIAL

finding, or its regulations and practice governing the collapsing of affiliated entities. Appx7507-7520 (discussion of preliminary methodology). The Department also ignored Petitioners' request to issue a supplemental questionnaire to Dalmine in advance of the verification. Thereafter, the Department conducted on-site verification of Dalmine's responses in Italy in July 2023. Appx7525.

On September 25, 2023, Petitioners filed a timely administrative case brief with the Department. Appx6808-6830. Petitioners' Case Brief again urged the Department to conduct a collapsing analysis, and to consider the record evidence supporting such a finding. *See generally id.* In fact, the collapsing issue was the *sole* focus of Petitioners' affirmative case brief. *Id.* Because Petitioners' June 1 Comments had been accepted and not rejected upon receipt by the Department, Petitioners cited the same five Department memoranda in their case brief. *Id.; see also* 19 C.F.R. § 351.309(c) (requiring interested parties to raise all arguments in the case brief that they believe remain relevant to the Department's assessment in the final results). Dalmine also filed a timely case brief, raising issues not subject to this appeal. *See* Appx6798-6807.

NONCONFIDENTIAL

Thereafter, both Petitioners and Dalmine filed timely rebuttal briefs. Appx6846-6857; Appx6831-6845. Dalmine's Rebuttal Brief addressed Petitioners' collapsing argument and referred to certain Department memoranda from prior cases cited in Petitioners' Case Brief. Appx6831-6845.

On December 8, 2023, over two months later and only three weeks before issuance of the *Final Results*, the Department suddenly rejected Petitioners' Case Brief and removed it from the record of the proceeding. Appx7550-7552 (hereinafter, "Department's First Rejection Letter"). The First Rejection Letter claimed that the citations to prior agency memoranda contained in Petitioners' Case Brief constituted "factual information," and because those memoranda had not been placed on the record of the underlying administrative review, they were untimely submitted in Petitioners' Case Brief after the record had closed. Appx7551. The Department instructed Petitioners to redact the citations to and discussions of those memoranda and to refile the case brief. *Id.*

To timely comply with the Department's instructions, Petitioners redacted the citations to and discussions of the memoranda and refiled

the case brief on December 12, 2023. Appx6858-6880. In addition, Petitioners filed a letter requesting reconsideration and withdrawal of the rejection of the case brief. Appx7553-7558 (hereinafter, "Petitioners' First Request for Reconsideration"). Petitioners explained that the same discussion of the memoranda contained in Petitioners' Case Brief was also contained in Petitioners' June 1 Comments, and, therefore, had already been on the record for the Department's consideration *for over six months without objection from the Department*. Appx7554-7557. Petitioners also explained that the reason why they repeated the same arguments from their Pre-Preliminary Comments in the case brief is because the regulations explicitly require that any arguments raised during the proceeding that continue to be relevant at the time of briefing must be raised in a party's case brief. Appx7556.

On December 14, 2023, the Department issued another letter, this time rejecting both Petitioners' Case Brief refiled on December 12, 2023, and Petitioners' June 1 Comments. Appx7559-7561 (hereinafter, "Department's Second Rejection Letter"). The Department now claimed that Petitioners' June 1 Comments also contained untimely new factual information in the form of citations to the five Department memoranda

NONCONFIDENTIAL

from prior cases because those memoranda were not placed on the

underlying review record. Appx7559-7560. The Department also

instructed Petitioners to remove references to those memoranda in the

table of contents of their refiled case brief. Appx7560. The Department

instructed Petitioners to remove all references to the memoranda in

their refiled case brief and their pre-preliminary results comments, and

to then re-file both documents with the agency. *Id.*

On December 18, 2023, as instructed, Petitioners refiled both their

case brief and pre-preliminary results comments with all references to

the relevant memoranda redacted. Appx6902-6924; Appx6881-6901.

Also on December 18, Petitioners filed a second request for

reconsideration and withdrawal of the rejection of their submissions.

Appx7563-7575 (hereinafter, "Petitioners' Second Request for

Reconsideration"). Petitioners explained that the citation to and

discussions of prior agency memoranda had been on the record for over

six months, since before the *Preliminary Results*, thereby affording the

Department ample time to consider them. Appx7570-7573. Petitioners

also explained that, as a legal matter, citations to prior agency

memoranda are not "factual information" within the meaning of the

NONCONFIDENTIAL

Department's regulations at 19 C.F.R. § 351.102(b)(21). Appx7565-7570. Furthermore, decision memoranda from prior agency decisions, by their very nature, are not factual information, but reflect agency rationale for a determination or policy. Appx7565-7570. Moreover, all of the cited memoranda were incorporated by reference into the decision memoranda and *Federal Register* notices that they support for those cases, thereby demonstrating they are agency rationale. Appx7565-7567 (listing out the precise citation strings for each of the five memoranda to demonstrate their incorporation by reference into the decision memoranda and *Federal Register* notices in each case). Petitioners requested that the Department reinstate the original versions of their case brief and June 1 comments that included argument and citations to relevant agency decision memoranda. Petitioners also requested a meeting with Department officials. Appx7564.

On December 20, 2024, the Department held a virtual meeting with Petitioners' counsel and agency officials.[3] Appx7579. During the

---

[3]    On the same day, the Department rejected and removed from the administrative record Dalmine's rebuttal brief which contained citations to some of the same affiliation and collapsing memoranda at issue in Petitioners' case brief and pre-preliminary results comments. Appx7576-7577. The Department instructed

(cont'd on next page)

NONCONFIDENTIAL

meeting, Petitioners' counsel discussed all the legal and factual arguments contained in their December 12 and December 18 letters, and urged the Department to reconsider and withdraw its rejection of Petitioners' Case Brief and June 1 Comments. *Id.*

Two weeks later, the Department issued its *Final Results*, which were published on January 10, 2024. Appx1012-1013. The *Final Results* failed to address *any* of the legal and factual arguments Petitioners raised in their letters and during the December 20 meeting. Appx1000-1011. The Department cited no agency policy nor specific regulatory provision to justify the rejection of Petitioners' submissions. *Id.* The *only* reference to the issue is in a footnote in the background section of the Department's finding and states "{b}ecause the petitioners' initial case brief contained untimely new factual information (NFI), we rejected it from the record and allowed petitioners to refile it without the NFI, which they did." Appx1001, n.5. The Department was otherwise completely silent on this issue.

---

Dalmine to redact and refile its rebuttal brief after removing references to the subject memoranda. *Id.*

NONCONFIDENTIAL

In the *Final Results*, the Department found that Dalmine and
Silcotub are affiliated, thereby satisfying the first collapsing criterion.
Appx1006. Despite finding that Dalmine and Silcotub are affiliated,
however, the Department explained that it did not find it necessary to
collapse the two companies. *Id.* Specifically, with respect to the second
collapsing criteria (*i.e.*, whether the producers have production facilities
for producing similar or identical products that would not require
substantial retooling of either facility), the Department stated that
because Silcotub's production operations are based in Romania, the
Department does not find Silcotub to be a producer of subject
merchandise, or believe that it has the ability to produce such
merchandise through minor alterations to its facilities. Appx1007. With
respect to the final collapsing criteria (*i.e.*, whether there is a significant
potential for manipulation of price or production), the Department
acknowledged that Dalmine and Silcotub are wholly-owned by the same
company and have significant transactions between them related to the
production and sale of Italian cold-drawn mechanical tubing. *Id.* The
Department concluded, however, that the record evidence did not
demonstrate that Dalmine and Silcotub have any overlap in

NONCONFIDENTIAL

management or have common members on their Boards of Directors or share facilities or employees. Appx1007-1008. Furthermore, the Department explained that "the potential for manipulation of price does not *currently* exist because: (1) Silcotub does not export, to the United States, Italian cold-drawn mechanical tubing produced by any other company than Dalmine; (2) Dalmine has fully reported Silcotub's downstream sales of Dalmine's cold-drawn mechanical tubing in its U.S. sales database, as required by section 772 of the Act; and (3) Silcotub does not have its own cash deposit rate (thereby creating the potential for the companies to export under the more advantageous of the two rates)." Appx1008 (emphasis added). The Department found no potential for manipulation of production because: "(1) Silcotub is located in Romania and cannot produce subject merchandise or foreign like product; and (2) Dalmine fully reported all production-related transactions with Silcotub, and these transactions are subject to the special rules for affiliated party costs." *Id.* For these reasons, the Department continued to treat Dalmine and Silcotub as separate entities. *Id.*

NONCONFIDENTIAL

## Argument

## I.  The *Final Results* Are Not Supported By Substantial Evidence Because the Department Failed to Provide Any Rationale for Rejecting Petitioners' Submissions

Remand is necessary because the Department's *Final Results* failed to provide any explanation or justification for the rejection of Petitioners' submissions and the claim that citations to agency memoranda from prior cases are "factual information" that must be submitted on the record within certain time limits. The *Final Results* unquestionably ignored the legal and factual arguments Petitioners presented in both the First and Second Requests for Reconsideration that explain why the rejection of citations to prior agency decisions is unlawful and not supported by agency practice.[4] Because those memoranda explained the Department's established practice and why the decision as to Dalmine was inconsistent with that practice, the rejection of the discussion of those cases meant that the Department did not fully consider and address the full arguments that Petitioners placed before it.

---

[4]    The Department's silence in the *Final Results* indicates there is little, if anything, the Government can argue before the Court at this point in the appeal

(cont'd on next page)

NONCONFIDENTIAL

A basic tenet of trade law is the agency's obligation to address the arguments presented by interested parties. According to the U.S. Court of International Trade ("CIT"), the "substantial evidence standard requires that Commerce thoroughly examine the record and 'articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *See Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1309, 1312 (Ct. Int'l Trade 2022) (internal citations omitted). Additionally, no explanation is not "'a satisfactory explanation.'" *Id.* at 1312. The CIT has also held that "a failure to address an essential argument in making a final decision is sufficient grounds for remand." *Id.* (citing *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1367 (Ct. Int'l Trade 2020)). In *Bonney*

---

process. Any explanation for the Department's actions that are not articulated by the agency on the record in the first instance should be treated as impermissible *post hoc* rationalization. *See U.H.F.C. v. United States*, 916 F.2d 689, 700 (Fed. Cir. 1990) ("On review, a court, including the Court of International Trade, is constrained to apply the applicable standard of review to the rationale put forth by the agency in support of its action. Post-hoc rationalizations of agency actions first advocated by counsel in court may not serve as the basis for sustaining the agency's determination.") (internal citations omitted). *See also In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1344-45 (Ct. Int'l Trade 2022) ("*Regents* also constitutes a warning to agencies regarding the impermissibility of post hoc reasoning as much as it constrains the court's review of such reasoning provided pursuant to a remand.") (citing *Dep't of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1908 (2020)).

NONCONFIDENTIAL

*Forge*, the CIT remanded the Department's final determination in the antidumping duty investigation of Forged Steel Fittings from India because the Department failed to address an argument raised by plaintiffs in writing that was relevant to an essential issue. *Id.* at 1312-1313. The Court explained that "when 'there is nothing in the administrative record showing that Commerce considered (much less addressed)' a party's explanation or argument relating to an issue 'essential to its analysis . . . the Court cannot sustain Commerce's decision.'" *Id.* at 1310 (quoting *Hung Vuong Corp.*, 483 F. Supp. 3d at 1367); *see also CP Kelco U.S., Inc. v. United States*, 949 F.3d 1348, 1356 (Fed. Cir. 2020) (The Department "must 'examine the record and articulate a satisfactory explanation for its action.'") (internal citation omitted)).

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has also explained that although it will "uphold 'a decision of less than ideal clarity if the agency's path may reasonably be discerned,' the required explanation must reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and

NONCONFIDENTIAL

what facts the agency is finding." *See CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (internal citation omitted). The Department failed in this basic obligation by ignoring Plaintiffs' arguments and this issue entirely in the *Final Results*. The only recognition of this whole issue is in a footnote in the *IDM* wherein the Department stated "{b}ecause the petitioners' initial case brief contained untimely new factual information (NFI), we rejected it from the record and allowed petitioners to refile it without the NFI, which they did." Appx1001, n.5. Otherwise, the Department was silent on the issue. By failing to provide any justification for its decision, the Department failed to provide a basis on which the Court can evaluate the agency's decision to reject Petitioners' submissions by claiming they contained new factual information, rendering the *Final Results* unsupported by substantial evidence.

The only place that the Department provides even a limited explanation of its rationale is in the two letters rejecting Petitioners' filings. The rationale provided, however, is vague and has no basis in the regulations. First, the Department simply stated that the documents were being rejected for including references to memoranda

NONCONFIDENTIAL

that were not on the record of the proceeding.  *See* Appx7550-7552;

Appx7559-7561. It did not cite to policy requiring memoranda

explaining the Department's precedent and policy statements to be

placed on the record. Then, the Department claimed:

> Section 351.301 of the Department of Commerce's
> (Commerce)'s regulations set forth the time limits
> for submission of new factual information (NFI),
> as defined by 19 CFR 351.102(b)(21). The
> deadline for this NFI was beyond the deadline for
> submitting NFI in this administrative review.
> Section 351.301(b) of Commerce's regulations
> requires that every submission of factual
> information must be accompanied by a written
> explanation identifying the subsection of 19 CFR
> 351.102(b)(21) under which the information is
> being submitted. However, this information was
> not submitted with an explanation identifying the
> provision in 19 CFR 351.102(b)(21) under which
> the information is being submitted.

Appx7551; Appx7560. The Department made this conclusory assertion

but cited no regulatory or precedential authority to support the notion

that agency memoranda explaining its rationale for determinations in

other cases are "factual information" within the meaning of

§ 351.102(b)(21). *Id.* Incredibly, the Department faulted Plaintiffs for

failing to identify what provision of 19 C.F.R. § 351.102(b)(21) applies.

But Plaintiffs did not cite this provision because the regulations do not

NONCONFIDENTIAL

apply to agency decision memoranda from prior cases that are not being offered for the facts within them, but for the policy decisions they represent and the types of scenarios to which those policies apply.

Moreover, despite generally pointing to § 351.102(b)(21) as allegedly governing the submission of factual information, the Department itself never explained which of the five subsections of the regulations it believes applies here. *Id.* Indeed, none do. Having not identified which category of factual information that the affiliation and collapsing memoranda constitute, the Department has not established that § 351.102(b)(21) applies or that the timing requirements of § 351.301 apply. *See also infra* Sections II.A-B (discussing in more detail the five specific types of factual information covered by the regulations).

Following the Department's initial failure to provide a reasoned basis for rejecting Petitioners' citations, the Second Request for Reconsideration explained that the subject affiliation and collapsing memoranda do not fall under any of the five categories of factual information listed under 19 C.F.R. § 351.102(b)(21). Appx7563-7575. Petitioners noted that it "is telling that the Department's Rejection Letters mention section 351.102(b)(21) generally, but point to none of

NONCONFIDENTIAL

the specific categories of factual information as applicable. That is simply because none applies." Appx7565. Petitioners again explained that agency decisions are not factual information, but instead, reflect agency rationale for a determination. Appx7565-7568. Moreover, Petitioners explained that affiliation and collapsing memoranda from the cases cited are also cited by the Department in either the preliminary or final decision memoranda and are, thus, incorporated by reference into the Department's decisions in those cases. *Id.* Petitioners also attended a virtual meeting with Department official two weeks before the final results to discuss their submissions and this issue in detail. Appx7579.

In the *Final Results*, the Department failed to address Petitioners' argument raised in writing in the Second Request for Reconsideration (and repeated during the December 20th virtual meeting) that "19 C.F.R. § 351.102(b)(21)(i)-(v) defines five categories of factual information, none of which cover the scenario here in which a party cites decision memoranda from prior agency determinations." Appx7563-7575. The situation presented here is akin to *Bonney Forge* in that Petitioners' argument was relevant to an essential issue (*i.e.*,

NONCONFIDENTIAL

inclusion of and reliance on Department memoranda from other proceedings that are directly applicable to the treatment of facts of record of the underlying proceeding). In *Bonney Forge*, the CIT found that the Department "did not address Plaintiffs' argument in the final determination . . . 'There is no discussion {in the record} about why a virtual verification would not have been feasible.'" *See Bonney Forge*, 560 F. Supp. 3d at 1312 (citation omitted). Consequently, the court found that substantial evidence did "not exist to uphold Commerce's decision to bypass verification, virtual or otherwise." *Id.* Here too the Department did not address Plaintiffs' arguments and supporting citations that affiliation and collapsing memoranda, which demonstrate comparable circumstances in which the agency applied an established policy do not constitute factual information pursuant to 19 C.F.R. § 351.102(b)(21). Appx1000-1011. Not only did the Department not provide any reference to specific language in the regulation or past practice in which it reached a similar conclusion that affiliation and collapsing memoranda offered as precedent constitute factual information, it provided no explanation at all. *Id.* The Court cannot

NONCONFIDENTIAL

uphold a decision that is not supported by substantial evidence *on the record*. 19 U.S.C. § 1516a(b)(1)(B)(i).

Nor do the Department's rejection letters articulate a satisfactory explanation for its treatment of agency affiliation and collapsing memoranda as factual information and its rejection of Petitioners' filings. Appx7550-7552; Appx7559-7561. Without knowing the basis for the Department's decision, the Court is unable to evaluate the agency's decision-making (or lack thereof) and remand is necessary. *See Bonney Forge*, 560 F. Supp. 3d at 1312 (The Department must "thoroughly examine the record and 'articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made'"). A case is properly remanded where the agency "fail{ed} to consider all relevant arguments" made by the parties. *Altx, Inc. v. United States*, 370 F.3d 1108, 1119-20 (Fed. Cir. 2004); *see also Bonney Forge*, 560 F. Supp. 3d at 1316 ("Record review requires a record. Because Commerce has failed to make one concerning its decision not to engage in verification, virtual or otherwise, its decision may not stand."). "Indeed, this Court has recently explained that a failure to address an essential argument in making a final decision is sufficient

NONCONFIDENTIAL

grounds for remand." *Bonney Forge*, 560 F. Supp. 3d at 1312 (citing *Hung Vuong Corp.*, 483 F. Supp. 3d at 1367).

The *Final Results* are unsupported by substantial evidence because the Department utterly failed to provide a rationale for rejecting Petitioners' administrative case brief and pre-preliminary results comments. *See Motor Vehicle Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983); *see also Husteel Co. v. United States*, 491 F. Supp. 2d 1283, 1291-93 (Ct. Int'l Trade 2007) (the Department must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."). Accordingly, remand is warranted.

II.    <u>The Department's Misclassification of Agency Decision
      Memoranda as "Factual Information" is Not Supported by
      Substantial Evidence, is Otherwise Not in Accordance With Law,
      and Constitutes an Abuse of Discretion</u>

    A.    <u>The Department's Regulations Codify Five Specific Types of
      Factual Information, None of Which Applies To Agency
      Memoranda from Prior Cases</u>

Although the Department's failure to address Plaintiffs' arguments

in the *Final Results* provides a sufficient basis alone for remand, the

Department's claim in the First and Second Rejection Letters that the

regulations defining factual information apply to agency memoranda is

not supported by the language of the regulation nor any other

authority. The Department's regulations govern the submission of

factual information during its proceedings, including administrative

reviews. Section 351.102(b)(21) identifies and defines the five types of

"factual information" the Department will consider in a proceeding:

> (i) Evidence, including statements of fact,
> documents, and data submitted either in
> response to initial and supplemental
> questionnaires, or, to rebut, clarify, or correct
> such evidence submitted by any other interested
> party;

> (ii) Evidence, including statements of fact,
> documents, and data submitted either in support
> of allegations, or, to rebut, clarify, or correct such
> evidence submitted by any other interested party;

-35-

NONCONFIDENTIAL

(iii) Publicly available information submitted to value factors under § 351.408(c) or to measure the adequacy of remuneration under § 351.511(a)(2), or, to rebut, clarify, or correct such publicly available information submitted by any other interested party;

(iv) Evidence, including statements of fact, documents and data placed on the record by the Department, or, evidence submitted by any interested party to rebut, clarify or correct such evidence placed on the record by the Department; and

(v) Evidence, including statements of fact, documents, and data, other than factual information described in paragraphs (b)(21)(i)-(iv) of this section, in addition to evidence submitted by any other interested party to rebut, clarify, or correct such evidence.

19 C.F.R. § 351.102(b)(21).

In the First and Second Rejection Letters, the Department claimed that citation to and inclusion of certain excerpts from five Department memoranda issued in other proceedings analyzing affiliation and collapsing decisions constituted new factual information. Appx7550-7552; Appx7559-7561. In these five memoranda, the Department discussed its affiliation and collapsing analysis methodology and explained its decision to collapse certain affiliated entities including whether or not to treat them as a single entity based

NONCONFIDENTIAL

on the facts of those cases. *See* Appx3874-3894; Appx6808-6830. The Department stated that these memoranda are defined as factual information under 19 C.F.R. § 351.102(b)(21) that are subject to the filing procedures and timing restrictions under 19 C.F.R. § 351.301. Appx7550-7552; Appx7559-7561. Because Petitioners did not submit actual copies of these memoranda on the record of the proceeding, the Department determined that Petitioners' citations to the memoranda in their pre-preliminary results comments and case brief was untimely. *Id.* The Department's interpretation of the language of its regulations was unreasonable and should be rejected.

Contrary to the Department's claim, affiliation and collapsing memoranda from prior cases do not fall under any of the five categories of "factual information" identified under 19 C.F.R. § 351.102(b)(21). Nor did the Department ever point to a specific subsection that it believes applies here. *See generally* Appx1012-1013; Appx1000-1011; Appx7550-7552; Second Appx7559-7561. Specifically, these memoranda are not evidence submitted either in response to initial and supplemental questionnaires, or, to rebut, clarify, or correct such evidence submitted by any other interested party. *See* 19 C.F.R.

NONCONFIDENTIAL

§ 351.102(b)(21)(i). They are also not "evidence" submitted either in support of allegations, or, to rebut, clarify, or correct such evidence submitted by any other interested party. *See id.* § 351.102(b)(21)(ii). The memoranda are not information submitted to value factors under 19 C.F.R. § 351.408(c) or to measure the adequacy of remuneration under 19 C.F.R. § 351.511(a)(2), or, to rebut, clarify, or correct such publicly available information submitted by any other interested party. *See id.* § 351.102(b)(21)(iii). Additionally, the memoranda are not evidence placed on the record by the Department, or, evidence submitted by any interested party to rebut, clarify or correct such evidence placed on the record by the Department. *See id.* § 351.102(b)(21)(iv). Lastly, the memoranda are not any other type of "evidence" submitted by any other interested party to rebut, clarify, or correct other evidence on the record. *See id.* § 351.102(b)(21)(v).

When it adopted the five categories of factual information, the Department stated that the definition of the "evidence" that it was intending to cover "included statements of fact, documents, and data." *Definition of Factual Information and Time Limits for Submission of Factual Information, Final Rule*, 78 Fed. Reg. 21,246, 21,249 (Dep't

NONCONFIDENTIAL

Commerce May 10, 2013). Relevant here, however, is the Department's comment that it would not adopt a policy of automatically incorporating the factual record from previous segments of the same proceeding into the current review's factual record. *See id.* at 21,249-50. The Department stated that "the administrative record of a given segment is intended to reflect the specific facts for the period under review. . . ." *Id.* at 21,250. This language clearly contemplates that factual information for the record of a review is evidence directly related to the respondent in the review. Nothing from the discussion implementing the regulation includes any reference to decision memoranda, cost memoranda, or collapsing and affiliation memoranda from other cases that explain the Department's policy and decision making given certain fact patterns. Fact patterns in other cases do not constitute evidence in this case; instead, they constitute the context and past rationale for both the agency and the Court to evaluate the determination being made based on the facts of this record.

Here, none of the statements in the five collapsing memoranda are "evidence" related to the operations of Dalmine and Silcotub relevant to collapsing those particular entities on this record. Instead, the

NONCONFIDENTIAL

affiliation and collapsing memoranda to which the Department objected contained statements of practice and policy by the Department, based on similar factual patterns in other cases, against which the Department's treatment of the facts related to Dalmine and Silcotub must be evaluated by the Court. Such memoranda are not factual information within the meaning of § 351.102(b)(21). This distinction is important because the agency is required to follow its consistent practice in reaching decisions or to provide a reasonable explanation for its departure. *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1342 (Fed. Cir. 2021) (citing *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003)). This standard requires that parties be able to hold up statements of practice by the agency as a mirror to the agency in its decision-making and as a means for the Court to evaluate its practice in this case against its past practice. The Department itself has failed here to provide any explanation or support for its interpretation of factual information.

Moreover, the Department's treatment of affiliation and collapsing memoranda as "factual information" is inconsistent with the agency's regulations at 19 C.F.R. § 351.102(b)(21) which do not on their face

apply to any type of agency decision memoranda and is, thus, not in accordance with law. *See Huvis Corp.,* 525 F. Supp. 2d at 1374 (the Court will find the Department's action to be not in accordance with law when that decision is contrary to statute, regulation, precedent, or procedures.).

"Commerce enjoys 'broad discretion' to promulgate and enforce its procedural rules." *Goodluck India Lt. v. United States*, 11 F.4th at 1344 (quoting *Stupp Corp. v. United States*, 5 F.4th 1341, 1350–51 (Fed. Cir. 2021)); *see also Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970) ("{An agency} is entitled to a measure of discretion in administering its own procedural rules . . . ."). That discretion is not without limits, however, and agency procedural actions may be unlawful if contrary to regulation or if the procedural action is "'egregiously removed from fairness.'" *Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353, 1370 (Ct. Int'l Trade 2023) (quoting *Doty v. United States*, 53 F.3d 1244, 1251 (Fed. Cir. 1995)). In this case, the Department has not cited to a single precedent for its interpretation of its regulation in this manner, nor even explained what specific language in either §§ 351.102 or 351.301 encompassed that

NONCONFIDENTIAL

interpretation. Nothing in the Department's regulation, the *Final Results*, or the two rejection letters supports Commerce's interpretation of § 351.102(b)(21) as encompassing factual information within the meaning of the regulation. It points to no specific law or precedent to support its interpretation. Such an interpretation of its procedural rules must be deemed "egregiously removed from fairness." *Id.* Indeed, every decision memorandum and every court precedent is similarly based on a set of facts not in evidence in the review at issue.

Because the Department failed to provide any rationale for classifying agency collapsing and affiliation memoranda as "factual information," its decision to treat them as such is not supported by substantial evidence. Additionally, because the Department's classification of agency affiliation and collapsing memoranda as "factual information" is not supported by substantial evidence, the Department's rejection of Petitioners' submissions constitutes an abuse of discretion. The Federal Circuit has explained that an "abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, *on factual findings that are not supported by substantial evidence*, or represents an unreasonable judgment in weighing relevant factors." *See*

NONCONFIDENTIAL

*Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (emphasis added) (internal citation omitted). Here, the Department's treatment of agency collapsing and affiliation memoranda as "factual information" is a factual finding that is unsupported by substantial evidence. Pursuant to the Federal Circuit's finding in *Consol. Bearings*, therefore, the Department's rejection of Plaintiffs' submissions based on the treatment of agency collapsing and affiliation memoranda as "factual information" constitutes an abuse of discretion.

### B. The Rejected Agency Memoranda Were Incorporated by Reference Into the Decision Memoranda and *Federal Register* Notices in Those Cases Precisely Because They Provided Agency Rationale

In Petitioners' Second Request for Reconsideration, in the arguments which went completely unaddressed by the Department, Petitioners explained that the five affiliation and collapsing memoranda at issue were explicitly incorporated by reference into the preliminary and final decision memoranda in those cases. Appx7563-7575. Thus, those memoranda are undeniably expressions of agency rationale because they are cited as support for the Department's decision-making in those

cases.[5] *Id.* Moreover, Department preliminary and decision memoranda

are routinely adopted by reference in the accompanying *Federal*

*Register* notices. *See, e.g., Final Results,* 89 Fed. Reg. at 1,523, n.3 ("*See*

Memorandum, 'Issues and Decision Memorandum for the Final Results

---

[5]    *See Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order* (Apr. 6, 2023) at 7, n.34 ("Much of the information used to make this determination is business proprietary and is addressed in the Preliminary Affiliation and Collapsing Memorandum."); *Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Mexico; 2020-2021* (Nov. 30, 2022) at 4-5, n.26 ("For a complete discussion of our affiliation and collapsing analysis, *see* the Preliminary Collapsing Memorandum."); *Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Common Alloy Aluminum Sheet from the People's Republic of China; 2018-2020* (Dec. 22, 2021) ("In these final results, we continue to find these three companies are affiliated, and additionally find that all three companies should be treated as a single entity. *See* Memorandum, 'Administrative Review of the Antidumping Duty Order on Common Alloy Aluminum Sheet from the People's Republic of China: Final Affiliation and Collapsing Memorandum,' dated concurrently with this memorandum."); *Decision Memorandum for the Preliminary Results of the 2018-2019 Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or not Assembled into Modules, From the People's Republic of China* (Apr. 16, 2021) at 7-8, n.28 ("We have preliminarily determined that the following companies are affiliated, pursuant to section 771(33)(F) of the Act and should be treated as a single entity pursuant to 19 CFR 351.401(f)(1): Jinko IE; Jiangxi Jinko; Haining Jinko; Yuhuan Jinko; Zhejiang Jinko; and Jiangsu Jinko (collectively, Jinko)." (citing "Memorandum, 'Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or not Assembled into Modules, from the People's Republic of China: Affiliation and Collapsing Memorandum for Jinko Solar Import and Export Co., Ltd.,' dated concurrently with this memorandum.")); *Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Seamless Refined Copper Pipe and Tube from the Socialist Republic of Vietnam* (Jan. 26, 2021) at 12 ("For the reasons more fully explained in the Affiliation Memorandum, we find that Hailiang Vietnam and Hongkong Hailiang are affiliated pursuant to section 771(33)(F) of the Act.").

of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021–2022,' dated concurrently with, and hereby adopted by, this notice (Issues and Decision Memorandum)") (Appx1012-1013). Consequently, per the Department's own words, the agency's affiliation and collapsing memoranda are ultimately incorporated in the *Federal Register* notice to underly the decisions in those cases.

Affiliation and collapsing memoranda contain a discussion of the rationale behind the agency's decision to collapse or not collapse certain affiliated entities. Like the agency's rationale in preliminary and final decision memoranda, the rationale in affiliation and collapsing memoranda informs the agency's decisions in other proceedings and is relied upon by parties in their arguments. Just like in preliminary and final decision memoranda, in affiliation and collapsing memoranda, the Department analyzes facts and issues policy and legal determinations based on those facts. Affiliation and collapsing memoranda form the very basis for the Department's policies and practices and, therefore, interested parties should be able to freely cite to them without having to submit them on the record as "factual information" pursuant to 19

NONCONFIDENTIAL

C.F.R. § 351.301. Indeed, there is no reason, nor has the Department articulated one, why affiliation and collapsing memoranda should be construed as "factual information" and treated differently from preliminary and final decision memoranda.[6]

Furthermore, the Department's approach in the underlying review creates an unreasonable burden for interested parties. Due to the proprietary nature of most affiliation and collapsing analyses, the details of the Department's affiliation and collapsing analysis are usually addressed in separate memoranda and not within preliminary or final decision memoranda, which the agency keeps as public documents. This means that whenever a party wants to rely on a past agency decision regarding affiliation and collapsing, the only way to do so would be to anticipate such an issue arising and place the relevant affiliation and collapsing memoranda on the record while it is "open." *See* 19 C.F.R. § 351.301(c)(5) (stating that parties must submit any factual information to the record no later than 30 days prior to the scheduled issuance of the preliminary results). In practice, this is highly

---

[6]    That does not prevent the Department from establishing different filing requirements for these documents regardless of whether they are new factual information. Any such requirement, however, requires notice.

NONCONFIDENTIAL

problematic since it is virtually impossible to anticipate all of the potential issues that may arise in an antidumping proceeding before the administrative record is closed. In fact, it is very common for issues to arise for the first time after the preliminary results are issued and during the administrative briefing stage, well after the administrative record is closed and parties are no longer permitted to submit new factual information.

Any distinction, therefore, between collapsing memoranda and preliminary or final decision memoranda lacks merit, and again, the Department never expressed that or any other rationale on the record of the underlying review.

### C.   The Department Has Never Articulated a Policy of Treating Certain Agency Memoranda as "Factual Information"

Despite its approach in the underlying administrative review, the Department has not previously articulated a consistent policy of treating affiliation and collapsing memoranda from other cases as factual information, unlike *Federal Register* notices or preliminary and final decision memoranda that parties may cite to as agency practice. The Department never cited to "the existence of 'a uniform and

NONCONFIDENTIAL

established procedure . . . that would lead a party, in the absence of notification of a change, reasonably to expect adherence to the established practice or procedure.'" *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1347 (Ct. Int'l Trade 2022) (quoting *Ranchers-Cattlemen Action Legal Found. v. United States*, 74 F. Supp. 2d 1353, 1374 (Ct. Int'l Trade 1999)). It cited to no such interpretation in its decision or in its rejection letters. One would think that if such a practice existed, it would have cited to such precedent in its rejection letters. Again, this highlights the baseless nature of the Department's approach in this case.

While the Department does have discretion to change its practices and policies, the CIT has held the following:

> "{W}hen an agency departs from its practice, it must 'clearly set forth' the ground 'so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate.' In other words, Commerce may adopt and apply a new practice so long as the practice is 'reasonable and consistent with {Commerce's} statutory mandate' and any resulting determinations are 'explained and supported by substantial evidence on the record.'"

*See CP Kelco US, Inc. v. United States*, 211 F. Supp. 3d 1338, 1341 (Ct. Int'l Trade 2017) (internal citations omitted). As explained above, affiliation and collapsing memoranda do not fall within any of the five categories of factual information listed under 19 C.F.R. § 351.102(b)(21). Moreover, there was no express Department policy or established practice to treat affiliation and collapsing memoranda as factual information. Because the Department appears to have adopted a new approach here, it was required to demonstrate that the new approach is reasonable and consistent with the agency's statutory mandate and that any resulting determinations are explained and supported by substantial evidence on the record. The Department failed to do that. Not once did the Department specify the category of factual information under which it claimed that affiliation and collapsing memoranda belong.

### D.    The Department's Failure to Raise the Issue of Alleged New Factual Information in Plaintiffs' Filings Until Late in the Review Was Unreasonable

As explained above, the Department waited over six and a half months to raise the issue of alleged new factual information in Petitioners' June 1 Comments and waited over two and a half months to

NONCONFIDENTIAL

raise the issue of alleged new factual information in Petitioners' Case Brief. Appx7550-7552; Appx7559-7561. Moreover, the Department raised the issue of alleged new factual information in Petitioners' June 1 Comments *only after* Petitioners pointed out to the Department that Petitioners' June 1 Comments contained citations to the same Department affiliation and collapsing memoranda at issue in Petitioners' Case Brief. *Id.* This raises the question of whether the Department even reviewed Petitioners' June 1 Comments before the preliminary results and before Petitioners noted that those comments contained the memoranda citations. The Department's failure to take action until six months after the citations were first submitted to the record, and only three weeks before the final results, was unreasonable.

The Department's regulations contain a provision with time limits for the submission of factual information, including factual information under § 351.102(b). *See* 19 C.F.R. § 351.301(c). That section generally requires the Department to provide parties with notice and reasons when it rejects a submission for the record. Section 351.301(c)(5), for example, governs factual information not described in §§ 351.102(b)(21)(i)-(iv) and therefore falling in the catch-all provision of

-50-

§ 351.102(b)(21)(v). Assuming that is the provision in which the citations and information in the collapsing memoranda would be classified (Commerce has never said), the Department was required to take certain actions:

> (1) Upon receipt of factual information under this subsection, the Secretary will issue a memorandum accepting or rejecting the information and, to the extent practicable, will provide written notice stating the reasons for rejection.
>
> (2) If the Secretary accepts the information, the Secretary will issue a schedule providing deadlines for submission of factual information to rebut, clarify or correct the factual information.

19 C.F.R. § 351.301(c)(5). The Department did not reject the June 1 submission "upon receipt" and did not issue a written notice of rejection with reasons for the rejection, something the Department was obliged to do if the citations to the memoranda were actually factual information governed by §§ 351.102(21) and 351.301(c). Nor did the respondent object to the filing as either untimely or an improper submission of factual information.

The Department had time to request that the Petitioner place the full documents on its record, but did not do so. That the Department

rejected Petitioners' case brief and then retroactively rejected the June 1 Comments afterward suggests that the Department never even considered Petitioners' June 1 Comments and did not consider the arguments in the case brief until mere weeks before the final determination.

When the Department issued its *Preliminary Results*, the agency completely failed to address the affiliation/collapsing issue, requiring Petitioners to raise the issue in their administrative case brief as required by the regulations. *See* 19 C.F.R. § 351.309(c). To ensure that the Department addressed the issue of collapsing Dalmine and Silcotub, Petitioners cited the same memoranda again in their case brief. *See* Appx6808-6830. The Department waited two and a half months to alert Petitioners to the alleged inclusion of untimely factual information in their case brief. *See* Appx7550-7552. The Department's failure to notify Petitioners of any deficiency in their case brief until two months after the brief was filed, particularly when the purported new factual information included in the brief had been on the administrative record for over six months, was also unreasonable. Having left those comments and citations on the record for six months contrary to its own regulation

NONCONFIDENTIAL

requiring some sort of notice of its treatment, it was unreasonable for the Department to reject them mere weeks before the final results. If the Department wanted the Petitioners to file the full documents it need only have given Petitioners notice to do so.

The Federal Circuit has stated that the Department "reasonably exercises its discretion to reject an untimely submission *so long as interested parties are 'afforded both notice and a meaningful opportunity to be heard.'" See Jiangsu Zhongji Lamination Materials Co. v. United States*, 625 F. Supp. 3d 1355, 1374 (Ct. Int'l Trade 2023) (emphasis added) (citing *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1353 (Fed. Cir. 2015)). Here, Plaintiffs were afforded neither notice nor a meaningful opportunity to be heard. Plaintiffs were not alerted to an alleged deficiency in their pre-preliminary results comments and case brief until well after the administrative record had closed. Moreover, because the Department did not have an express policy of treating affiliation and collapsing memoranda as factual information, there was no reason for Plaintiffs to be aware of any deadline by which to submit such information on the record. For that reason, the *Final Results* should be remanded to the

NONCONFIDENTIAL

Department with instructions to reinstate the original case brief and for the Department to consider and respond to the arguments contained therein.

III. <u>The Department's Failure to Treat Dalmine and Silcotub as a Single Entity is Not Supported By Substantial Evidence</u>

In the underlying administrative review, Petitioners argued that the Department should collapse mandatory respondent Dalmine with its affiliate Silcotub and treat the two entities as a single entity. Petitioners first raised this argument in their comments submitted on January 9, 2023, more than five months before the *Preliminary Results* were scheduled to be issued. *See* Appx3237-3260. Petitioners raised this argument again in their pre-preliminary results comments filed on June 1, 2023. *See* Appx3874-3894. The Department completely failed to address this issue in its *Preliminary Results*, and Petitioners again raised the argument in their administrative case brief. *See* Appx6808-6830. In its *Final Results*, the Department addressed the collapsing issue and stated the following:

> Based on evidence on the record of this administrative review, Commerce continues to find that Dalmine and Silcotub are affiliated within the meaning of section 771(33) of the Act.

NONCONFIDENTIAL

> However, we disagree with the petitioners that it is necessary to collapse these companies, pursuant to 19 CFR 351.401(f), for purposes of these final results.

Appx1006 (internal citation omitted). This analysis, however, ignored the agencies own decisions in past cases since the Department rejected and removed from the record all of Petitioners citations to the relevant affiliation and collapsing memoranda. Appx1006-1008. The issue of collapsing is crucial to the Department's treatment of the costs of two affiliated entities. As Plaintiffs argued throughout the review, the Department should have sought additional cost information regarding Silcotub's operations and collapsed the two entities. Appx3240-3241, Appx3875, and Appx3889. The Department's failure to do so resulted in costs missing from the record and the failure to treat both companies as a single entity and assess their costs accordingly.

The Department's practice of collapsing affiliated producers is codified in 19 C.F.R. § 351.401(f), which states the following:

> {T}he Secretary will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and the

NONCONFIDENTIAL

> Secretary concludes that there is significant potential for manipulation of price or production.

*See* 19 C.F.R. § 351.401(f). The Department's regulations at 19 C.F.R. § 351.401(f)(2) further explain the three factors it will evaluate for significant potential for manipulation of price or production:

> In identifying a significant potential for the manipulation of price or production, the factors the Secretary may consider include:
>
> (i) The level of common ownership;
>
> (ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and
>
> (iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

*Id.* at § 351.401(f)(2).

Additionally, the *Preamble* to the final regulations clarifies how the Department should apply this section in its collapsing analysis, explaining that this list of factors is "non-exhaustive." *See Antidumping Duties; Countervailing Duties: Final Rule*, 62 Fed. Reg. 27,296, 27,345-46 (Dep't Commerce May 19, 1997) ("*Preamble*"). The Department is not

NONCONFIDENTIAL

limited to examining the factors enumerated in the regulation and may consider other record evidence relevant to its analysis. The *Preamble* also states that the Department "has not adopted the suggestion that it will collapse only in 'extraordinary' circumstances. A determination of whether to collapse should be based upon an evaluation of the factors listed in paragraph (f), and not upon whether fact patterns calling for collapsing are commonly or rarely encountered." *Id.*

The Department's collapsing analysis is incorrect and inconsistent with the prior agency decisions cited by the Plaintiffs. Those cases set forth an established practice regarding collapsing under the facts of this case. By rejecting citations to relevant agency decisions and legal arguments related to those decisions, the Department ignored like scenarios in past cases. The Department's improper rejection and removal from the record of any references to and citation of the various Department affiliation and collapsing memoranda significantly impeded Petitioners' ability to support their argument by citing to Department practice and policy. Had the Department correctly conducted the analyses for the three factors for collapsing under 19 C.F.R. § 351.401(f)(2), and considered the agency precedent Petitioners cited, it

NONCONFIDENTIAL

should have concluded that the requirements for collapsing Dalmine and Silcotub are satisfied. "Agency action that deviates from prior policy decisions or established practice without reasoned justification is arbitrary and capricious." *Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353, 1374 (Ct. Int'l Trade 2023) (citing *Huvis Corp. v. United States*, 570 F.3d 1347, 1354 (Fed. Cir. 2009) (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)); *Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371, 1378 n.5 (Fed. Cir. 2007)); *In re Section 301 Cases*, 570 F. Supp. 3d at 1347.

Because the Department ignored relevant agency decisions cited by Petitioners, its decision to not collapse Dalmine and Silcotub in unsupported by substantial evidence. In explaining the substantial evidence standard, in *Bonney Forge*, the CIT stated that "a failure to address an essential argument in making a final decision is sufficient grounds for remand." *Bonney Forge*, 560 F. Supp. 3d at 1312. The case should be remanded to Commerce with instructions to reinstate Petitioners' original case brief and to render a decision that addresses the issues raised therein, including its treatment of similar facts in the five collapsing memoranda.

A.    <u>Record Evidence Demonstrates Dalmine and Silcotub Have
Production Facilities for Similar or Identical Products That
Would Not Require Substantial Retooling of Either Facility
in Order to Restructure Manufacturing Priorities</u>

Since the Department agreed that Dalmine and Silcotub are

affiliated entities (*see* Appx1006), Plaintiffs address the remaining

factors of the Department's affiliation and collapsing analysis.

With respect to the second factor (*i.e.,* whether the affiliated entities

have production facilities for similar or identical products that would

not require substantial retooling of either facility in order to restructure

manufacturing priorities), Plaintiffs pointed to record evidence

satisfying this requirement. *See* 19 C.F.R. § 351.401(f)(1). Specifically,

Plaintiffs explained that Dalmine produces subject merchandise as well

as hollows that are the [                    ] used in the production of

subject merchandise, and that Silcotub also produces hollows used in

the production of subject merchandise by Daprirylmine. Appx1030-

1031, Appx2945-2946, and Appx6816-6817. Silcotub also performs

cutting on subject tubing sold to it by Dalmine, that is ultimately

shipped to one of Dalmine's customers in the United States

[                    ] Appx1028. Dalmine also [

] Appx1031. Plaintiffs also cited record evidence that Dalmine and Silcotub both produce hollows that are used in the production of subject tubing, and both perform cutting on subject tubing. For example, Dalmine explains that for "hollows produced at Silcotub, the billet is produced at the steel shop in Romania and then transformed into hollows in the rolling mill at Silcotub's plant in Zalau." Appx3661. Similarly, for "hollows produced at Dalmine, the production starts with the billet produced at Dalmine's steel shop . . . {the} next step is the rolling of the billet to obtain the hollow, which is performed at Dalmine's [

] Appx3660-3661.

Furthermore, Plaintiffs explained that the Department's collapsing regulation does not require companies to produce the same subject merchandise. *Id.* Rather, the Department's regulations expressly allow the collapsing of companies that have the capability to produce similar products, as is the case here. Appx6817. In support of this argument, Plaintiffs cited a Department affiliation and collapsing memorandum from a previous case. Appx6817-6818 nn.21, 22 (citing Light-Walled

Welded Rectangular Carbon Steel Tubing from Taiwan; Circumvention

Inquiry – Preliminary Affiliation and Collapsing Memorandum (Apr. 6,

2023) at 5-6). This memorandum explained that the Department

previously found that when two entities produced similar products and

had the ability to produce identical products, they did in fact have

production facilities for similar or identical products that would not

require substantial retooling of either facility in order to restructure

manufacturing priorities. *Id.* Plaintiffs cited another affiliation and

collapsing memorandum to support their argument that the

Department has previously collapsed affiliated entities even when one

company was not engaged in the production of subject merchandise. *See*

Appx6818 n.23 (citing Steel Concrete Reinforcing Bar from Mexico:

Preliminary Collapsing Memorandum for Deacero Group (Nov. 30,

2022)). Both of these citations provided crucial support for the approach

the Department took in the prior cases and its relevance to this review.

    In its collapsing analysis in the *Final Results*, the Department

stated the following:

> {W}e disagree with the petitioners that Silcotub is
> a producer of subject merchandise, or that it has
> the ability to produce such merchandise through

> minor alterations to its facilities. Silcotub is located in Romania, and its production operations are based there.  Thus, Silcotub is unable to produce cold-drawn mechanical tubing which is subject to the Order (*i.e.*, subject merchandise, which has a country of origin of Italy); even if we were to treat Dalmine and Silcotub as a single entity, any cold-drawn mechanical tubing produced in Romania would not be subject to this proceeding.

Appx1007. The Department's analysis missed the point. It wrongly focused on whether Silcotub is a producer of subject merchandise, *i.e.*, merchandise produced in Italy, and it also failed to address material, confidential record evidence Plaintiffs cited during briefing. The correct inquiry was not whether the affiliated entities are producers of the subject merchandise, but whether the entities are producers that have production facilities for producing similar or identical products that would not require substantial retooling of either facility.

The Department failed to conduct the correct analysis with respect to the second factor and failed to consider relevant precedent by rejecting Plaintiffs' citations. In fact, as explained above, in their pre-preliminary results comments and case brief, Plaintiffs cited to a prior Department decision in which the agency addressed a similar issue. *See*

NONCONFIDENTIAL

Appx6817-6818 nn.21, 22 (citing Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan; Circumvention Inquiry – Preliminary Affiliation and Collapsing Memorandum (Apr. 6, 2023) at 5-6). In that case, the Department found that the affiliated entities produced similar products and that they had the ability to rent machines allowing for the production of identical products. *Id.* As a result, the Department determined that "they have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities." *Id.* The Department, therefore, wrongly rejected and removed Petitioners' citation to this decision and, as a result, came to a conclusion that was inconsistent with agency precedent.

### B. Record Evidence Demonstrated a Significant Potential for Manipulation of Price or Production

With respect to the third factor (*i.e.*, whether there is significant potential for manipulation of price or production), Plaintiffs explained that the Department's practice "does not require that all three factors of 19 C.F.R. § 351.401(f)(2) be present in order to find potential for manipulation of price or production" and that the Department considers

the totality of circumstances in its analysis. Appx6819-6820. To support their argument, Plaintiffs cited to another Department affiliation and collapsing memorandum. Appx6819-6820 nn.26-27 (citing Common Alloy Aluminum Sheet from the People's Republic of China: Final Affiliation and Collapsing Memorandum (Dec. 22, 2021) (hereinafter, "CAAS China Affiliation and Collapsing Memo") at 6). Petitioners cited the same memorandum to explain that in "'examining the factors that pertain to a significant potential for manipulation, Commerce considers both actual manipulation in the past and the possibility of future manipulation. The *Preamble* underscores the importance of considering the possibility of future manipulation: 'a standard based on the potential for manipulation focuses on what may transpire in the future.'" *Id.*

Once again, the Department ignored its own prior decisions, particularly those that were cited by Plaintiffs and wrongly rejected and removed from the record by the Department. Specifically, the Department ignored the fact that in "'examining the factors that pertain to a significant potential for manipulation, Commerce considers both actual manipulation in the past and the possibility of future

NONCONFIDENTIAL

manipulation.'" The Department's analysis makes no mention of whether the agency considered the possibility of future manipulation. *See* Appx1006-1008. In fact, with respect to the significant potential for manipulation of price, the agency acknowledged that it "does not *currently* exist," (Appx1008 (emphasis added)) indicating that either the agency did not evaluate the possibility for future manipulation, or that if it did, it could not say that such a possibility does not exist.

### 1.   Level of Common Ownership

Plaintiffs explained that the three factors for evaluation of significant potential for manipulation of price or production had been satisfied. Appx6820. With respect to the first factor (*i.e.*, level of common ownership), Plaintiffs noted that because Dalmine and Silcotub are owned by the same parent company, the first factor of 19 C.F.R. § 351.401(f)(2)(i) is satisfied. *Id.* In its collapsing analysis in the *Final Results*, the Department agreed that Dalmine and Silcotub are wholly-owned by the same company. Appx1007.

### 2.   Managerial Overlap

With respect to the second factor (*i.e.*, managerial overlap), Plaintiffs pointed to record evidence demonstrating that this factor had been

NONCONFIDENTIAL

satisfied. 19 C.F.R. § 351.401(f)(2)(ii). In particular, the record

demonstrates [

] For example, the

operating structure organization charts in of Dalmine's initial section A

questionnaire response indicate that while the [

] Appx6821 (citing Appx1068-1069). Similarly, while the

[

] *Id.* Plaintiffs explained

that these facts supported a finding of managerial overlap in support of

collapsing.

Plaintiffs also explained that while this is one of the factors that the

Department evaluates in its collapsing analysis, the agency has

previously found the requirements for collapsing to have been satisfied

even in instances where it determined that there was insufficient

evidence of managerial overlap between the relevant entities.
Appx6821-6822. In support of this argument, Plaintiffs cited another
Department affiliation and collapsing memorandum in which the
Department explained its decision to treat affiliated entities as a single
entity despite determining that they "have no overlap between
managerial employees." Appx6821-6822 (citing Seamless Refined
Copper Pipe and Tube from the Socialist Republic of Vietnam:
Affiliation and Single Entity Treatment Memorandum (Jan. 26, 2021)
(hereinafter, "Copper Pipe and Tube from Vietnam Affiliation Memo")
at 1, 9-10).

In its *Final Results*, the Department simply stated that it found no
evidence of managerial overlap between Dalmine and Silcotub, "nor is
there evidence that they have common members on their Boards of
Directors or share facilities or employees." Appx1007-1008. The
Department ignored two of its prior decisions (cited by Plaintiffs) in
which it "found the requirements for collapsing to have been satisfied
even in instances where it determined that there was insufficient
evidence of managerial overlap between the relevant entities."
Appx6821.

### 3.  Whether Operations Are Intertwined

Plaintiffs pointed to several pieces of record evidence of the fact that the operations of Dalmine and Silcotub are thoroughly intertwined in the production of subject merchandise. 19 C.F.R. § 351.401(f)(2)(iii); Appx6822-6827. Plaintiffs explained that Department's regulations direct the agency "to consider whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers." *See* Appx6822.

Indeed, the record demonstrates and the Department acknowledged that Dalmine and Silcotub share significant sales information. Appx6823; Appx1007. In its *Final Results*, the Department explained that "Dalmine and Silcotub share significant sales information, with certain sales of subject merchandise during the POR made from Dalmine via Silcotub (and other affiliates) to unaffiliated U.S. customers." Appx1007, n.34 (internal citation omitted). Furthermore, Plaintiffs pointed to evidence that the production facilities of Dalmine and Silcotub are thoroughly intertwined in the production of subject

NONCONFIDENTIAL

merchandise. Appx6823. Specifically, Plaintiffs stated that while [

] of blank pipes (*i.e.*, hollows) that Dalmine used to produce

subject merchandise were produced at its facility in Italy, the

remainder of the hollows used as an input to produce subject

merchandise were purchased from Silcotub. *Id.* Plaintiffs also pointed

out that:

> Silcotub   has   a   [
>
>
>
> ]  At  [
>
>
>
> ]  The  [
>
> ]

Appx6824 (citing Appx1031). In other words, during the period of

review, hollows and [                                                      ]

between Silcotub and Dalmine, demonstrating that, in essence,

Dalmine and Silcotub share facilities. *Id.* Additionally, Plaintiffs noted

that Dalmine "purchased hollows only from Silcotub and did not

purchase hollows from any other affiliated or unaffiliated supplier.

NONCONFIDENTIAL

Accordingly, the production of {tubing} at the Costa Volpino mill is only performed using Dalmine self-produced hollows or hollows purchased from Silcotub." Appx6825 (citing Appx3321).

Plaintiffs explained that Silcotub's selling expenses, including

[

] were reported by Dalmine in its indirect selling expenses. Appx6825 (citing Appx3321-3322). Therefore, the selling expenses of the two entities had already been collapsed. *Id.* Furthermore, Plaintiffs noted that for sales in the U.S. market, Silcotub performed logistical services such as maintaining inventory, arranging for freight from the mill to the port, delivery services, and arranging for repacking of merchandise, as needed. Appx6825-6826 (citing Appx3325). Silcotub also performed sales related administrative activities such as recording the sale in the system, issuing the invoice and other sales-related documentation, and processing the customer payment. *Id.* Plaintiffs also pointed out that Dalmine reported that for "EP sales by Silcotub, the date of invoice refers to the date of Silcotub's invoice issued to [                    ] indicating that Silcotub issued invoices for the sale of subject tubing in

the United States. Appx6826 (citing Appx3328). Finally, Petitioners explained that Dalmine acknowledged that from "an operational point of view, the Tenaris Groups companies, including Dalmine, Silcotub, TGS Uruguay, and TGS USA act like an integrated company using consolidated software, such as SAP, and procedures." Appx6826 (citing Appx1035).

Plaintiffs cited an affiliation and collapsing memorandum explaining the Department's decision to collapse a respondent with its affiliate because the "companies share sales information, coordinate in production and pricing decisions, share facilities and employees, and that there are significant transactions between them." Appx6818-6819 n.24. In sum, Plaintiffs pointed to sufficient record evidence demonstrating that Dalmine and Silcotub share sales information (as the Department itself acknowledged (Appx1007, n.34)), coordinate in the production and sale of subject merchandise, share facilities, and that there are significant transactions between them.  Appx6823-6827.

In its *Final Results*, the Department appears to have considered only two of four the elements listed under the third criteria for evaluating whether there is a significant potential for manipulation of price or

NONCONFIDENTIAL

production (*i.e.,* the sharing of facilities or employees and whether there were significant transactions between the affiliated producers). Appx1008. The Department acknowledged that there were indeed significant transactions between Dalmine and Silcotub, but it found no evidence of the sharing of facilities or employees between the two companies, despite the fact that Silcotub produces hot-finished hollows that feed Dalmine's cold finishing operations, thereby accounting for a significant percentage of Dalmine's overall cost structure. *Id.* Additionally, while the Department did acknowledge the fact that "Dalmine and Silcotub share significant sales information," (Appx1007, n.34) it ignored this finding when evaluating the potential for manipulation of price or production. The Department also ignored the remaining factor in its analysis (*i.e.,* whether operations are intertwined through involvement in production and pricing decisions), despite the evidence Plaintiffs submitted regarding this factor.

The Department ignored its prior decision (also cited by Plaintiffs) in which it explained that the Department's regulations direct the agency "to consider whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing

decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers." Appx6822 n.35 (citing Copper Pipe and Tube from Vietnam Affiliation Memo at 10). For some reason, the Department limited its analysis under the third factor to only two of the four criteria and ignored Petitioners' arguments, and the underlying evidence, with respect to the remaining criteria.

The Court cannot properly render a decision as to whether the *Final Results* are supported by substantial evidence and in accordance with law until the Department has actually considered Petitioners' arguments in light of its past decisions and practice. *Bonney Forge*, 560 F. Supp. 3d at 1312 ("Indeed, this Court has recently explained that a failure to address an essential argument in making a final decision is sufficient grounds for remand.") (internal citation omitted).

NONCONFIDENTIAL

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully urge this

Court to find that the Department's *Final Results* are not supported by

substantial evidence and not otherwise in accordance with law.

Plaintiffs urge this Court to remand the *Final Results* to the

Department with instructions to correct the errors set forth above.

Respectfully submitted,

/s/ Melissa M. Brewer
R. ALAN LUBERDA
MELISSA M. BREWER
MALIHA KHAN
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Plaintiffs

Dated: July 19, 2024

# CERTIFICATE OF COMPLIANCE
# WITH COURT OF INTERNATIONAL TRADE
# STANDARD CHAMBERS PROCEDURES

Pursuant to this Court's Order dated May 21, 2024 (ECF No. 34), setting the word limitation for Plaintiffs' ArcelorMittal Tubular Products LLC, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc., Motion for Judgment Upon the Agency Record to 14,000 words, counsel for Plaintiffs certifies that the attached Motion for Judgment Upon the Agency Record contains 13,907 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

Respectfully submitted,

/s/ Melissa M. Brewer
R. ALAN LUBERDA
MELISSA M. BREWER
MALIHA KHAN
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Plaintiffs

Dated:  July 19, 2024