A-475-838<br>
Remand<br>
Court No. 24-00039<br>
POR: 06/01/2021– 05/31/2022<br>
**Public Document**<br>
E&C/OV: CC

*Arcelormittal Tubular Products, et al. v. United States*,
**Court No. 24-00039 (CIT September 27, 2024)**
**Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *Arcelormittal Tubular Products, et al., Plaintiffs. v. United States*.[1] These final results of redetermination concern the *Final Results* in the antidumping duty (AD) administrative review of certain cold-drawn mechanical tubing of carbon and alloy steel (cold-drawn mechanical tubing) from Italy covering the period of review (POR) June 1, 2021, through May 31, 2022.[2] The Court granted Commerce's request for a voluntary remand to: (1) respond to the petitioners' request for reconsideration;[3] (2) reconsider the agency's position with respect to its rejection of materials in which parties cited other administrative proceedings; and (3) if appropriate, revise that position with respect to the admissibility of petitioners' submissions.[4]

---

[1] *See Arcelormittal Tubular Products, et al., Plaintiffs. v. United States*, Court No. 24-00039, ECF No. 41 (Sept. 27, 2024) (*Remand Order*).
[2] *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Final Results of Antidumping Duty Administrative Review; 2021–2022,* 89 FR 1523 (January 10, 2024) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[3] The petitioners are ArcelorMittal Tubular Products LLC, Michigan Seamless Tube, LLC, PTC Alliance Corp., Webco Industries, Inc., and Zekelman Industries.
[4] *See Arcelormittal Tubular Products, et al., Plaintiffs. v. United States*, Court No. 24-00039, ECF 40 (CIT September 27, 2024) (Defendant's Unopposed Motion For Voluntary Remand).

Commerce has now reconsidered the rejection of the documents containing these citations and quotations. As a result, we permitted the petitioners to refile the previously-rejected documents containing these citations, along with the source documents referenced in those submissions.[5] We also allowed Dalmine to resubmit its previously-rejected rebuttal brief that included a response to petitioner's discussion of these quotations and citations.[6]

We have now considered the petitioners' and Dalmine's arguments regarding the collapsing memoranda now on the record and find that these arguments do not alter our determination that, while Dalmine and its Romanian input provider, S.C. Silcotub S.A. (Silcotub), are affiliated, they are separate entities that should not be collapsed.

## II.   BACKGROUND

On June 11, 2018, Commerce published the *Order* on cold-drawn mechanical tubing from Italy.[7] On August 9, 2022, we initiated an administrative review of this *Order*, covering the period June 1, 2022, through May 31, 2022, for one exporter/producer, Dalmine.[8]

On June 1, 2023, the petitioners provided comments on Dalmine's responses for Commerce's consideration in its preliminary decision.[9] On July 7, 2023, we published the *Preliminary Results* of this review in the *Federal Register*, in which we calculated a preliminary

---

[5] *See* Memorandum, "Request To File Memoranda and Briefs," dated October 29, 2024 (Request to File Memoranda and Briefs); and Petitioners' Letter, "Petitioners' Submission of Memoranda Pursuant to the Department's Request," dated October 31, 2024 (Collapsing Memoranda); *see also* Petitioners' Letter, "Petitioners' Resubmission of Pre-Preliminary Results Comments and Case Brief for Consideration in Remand Redetermination," dated November 1, 2024 (Petitioners' Comments and Case Brief Resubmission).
[6] *See* Dalmine's Letter, *"*Resubmission of Originally Filed Rebuttal Brief Submitted on October 2, 2023," dated November 1, 2024 (Dalmine Rebuttal Brief).
[7] *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from the People's Republic of China, the Federal Republic of Germany, India, Italy, the Republic of Korea, and Switzerland:  Antidumping Duty Orders; and Amended Final Determinations of Sales at Less Than Fair Value for the People's Republic of China and Switzerland*, 83 FR 26962 (June 11, 2018) (*Order*).
[8] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 FR 48459 (August 9, 2022).
[9] *See* Petitioners' Letter, "Petitioners' Comments in Advance of the Department's Preliminary Results," dated June 1, 2023 (Pre-Preliminary Comments).

dumping margin of 2.00 percent for Dalmine.[10]  Thereafter, we received timely-filed case and rebuttal briefs from the petitioners and Dalmine.

On December 8, 2023, we determined that the petitioners' case brief contained untimely filed new factual information (NFI) in the form of quotations and citations to collapsing memoranda that were not on the record.  Therefore, we rejected this brief and allowed the petitioners to submit a redacted version of it without the NFI.[11]  On December 12, 2023, the petitioners requested that Commerce reconsider this decision.[12]

On December 14, 2023, we also found that the petitioners had included NFI in their Pre-Preliminary Comments; therefore, we also rejected this document and allowed the petitioners an opportunity to resubmit it.[13]  On December 18, 2023, the petitioners submitted another request for Commerce to reconsider its rejection of their administrative case brief, as well as a first request that Commerce reconsider its rejection of their Pre-Preliminary Comments.[14]  On this same date, the petitioners also filed redacted versions of both documents.[15]

On December 20, 2023, we met with the petitioners, who again requested we reconsider the rejection of these submissions.[16]  Commerce did not directly respond to the petitioners' request for reconsideration.

---

[10] *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy:  Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 43281 (July 7, 2023).
[11] *See* Commerce's Letter, "Rejection of Petitioner's Case Brief," dated December 8, 2023.
[12] *See* Petitioners' Letter, "Petitioners' Request for Reconsideration of Rejection of Case Brief," dated December 12, 2023.
[13] *See* Commerce's Letter, "Rejection of Petitioner's Submission," dated December 14, 2023 (December 14 Rejection Letter).
[14] *See* Petitioners' Letter, "Petitioners' Second Request for Reconsideration of Rejection of Case Brief and Pre-Preliminary Results Comments," dated December 18, 2023.
[15] *See* Petitioners' Letters, "Petitioners' Case Brief;" and "Petitioners' Comments in Advance of the Department's Preliminary Results," both dated December 18, 2023.
[16] *See* Memorandum, "Teleconference with the Petitioners," dated December 20, 2023.

On January 3, 2024, Commerce completed the 2021-2022 administrative review of this *Order*, in which we continued to compute a dumping margin of 2.00 percent for Dalmine.[17] In the *Final Results*, we considered the arguments presented in the petitioners' redacted briefs, including the argument that Dalmine and its affiliated input provider, Silcotub, should be collapsed.[18] After considering these arguments, we disagreed with the petitioners and did not collapse the companies.[19] The petitioners challenged before the Court our determination that Dalmine and Silcotub are separate entities and the rejection of petitioner's submissions.[20]

Commerce requested the Court grant a voluntary remand to allow Commerce to: (1) respond to the petitioners' request for reconsideration; (2) reconsider the agency's position with respect to its rejection of materials in which parties cited other administrative proceedings; and (3) if appropriate, revise that position with respect to the admissibility of petitioners' submissions.[21] On September 27, 2024, the Court granted Commerce's request for a voluntary remand.[22] On October 29, 2024, we requested that the petitioners submit public versions of six memoranda involving prior Commerce collapsing determinations made in other proceedings, the source documents which the petitioners cited and discussed in their previously-rejected Pre-Preliminary Comments and administrative case brief.[23] Commerce also provided the petitioners an opportunity to submit the original versions of their Pre-Preliminary Comments and administrative case brief and permitted Dalmine to resubmit the original version of its rebuttal brief that cited and discussed these memoranda.[24]

---

[17] *See Final Results*, 89 FR at 1523.
[18] *See Final Results* IDM at 5-6.
[19] *Id*.
[20] *See Remand Order*.
[21] *See* Defendant's Unopposed Motion for Voluntary Remand.
[22] *Id.*; *see also Remand Order*.
[23] *See* Request to File Memoranda and Briefs.
[24] *Id.*

4

On October 31, 2024, the petitioners submitted the requested collapsing memoranda, and on November 1, 2024, the petitioners resubmitted their Pre-Preliminary Comments and case brief for consideration.[25] Additionally, on November 1, 2024, Dalmine resubmitted its rebuttal brief.[26]

## III.   ANALYSIS

Pursuant to the *Remand Order*, we have reconsidered our rejection of the submissions noted above and have accepted these submissions for the record. It remains Commerce's position that: (1) the official record may not contain untimely filed factual information in accordance with 19 CFR 351.104(a)(2)(ii)(A); and (2) collapsing memoranda contain factual information which must be timely submitted on the administrative record of a proceeding before parties can rely on it. However, after considering petitioners' requests for reconsideration, Commerce exercised its discretion to "request any person {} submit factual information at any time during a proceeding or provide additional opportunities to submit factual information" under 19 CFR 351.301(a). Because the collapsing memoranda are now properly on the record,[27] the case briefs containing citations of the collapsing memoranda are admissible to the record in their original form,[28] and we have now considered whether the cited precedent alters our conclusion that there is no basis to treat Dalmine and Silcotub as a single entity. As discussed below, we have determined that it does not do so.

Pursuant to 19 CFR 351.401(f)(1), Commerce treats producers as a single entity where: (1) those producers are affiliated; (2) the producers have production facilities for producing

---

[25] *See* Petitioners' Letter, "Petitioners' Submission of Memoranda Pursuant to the Department's Request," dated October 31, 2024 (Collapsing Memoranda); *see also* Petitioners' Letter, "Petitioners' Resubmission of Pre-Preliminary Results Comments and Case Brief for Consideration in Remand Redetermination," dated November 1, 2024 (Petitioners' Comments and Case Brief Resubmission).
[26] *See* Dalmine's Letter, "Resubmission of Originally Filed Rebuttal Brief Submitted on October 2, 2023," dated November 1, 2024 (Dalmine's Rebuttal Resubmission).
[27] *See* Collapsing Memoranda.
[28] *See* Dalmine's Rebuttal Resubmission; *see also* Petitioner's Comments and Case Brief Resubmission.

similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities; and (3) there is a significant potential for manipulation of price or production.[29] In determining whether a significant potential for manipulation exists, 19 CFR 351.401(f)(2) states that Commerce may consider various factors, including: (1) the level of common ownership; (2) the extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and (3) whether the operations of the affiliated firms are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.[30] The Court has recognized that, when determining whether there is a significant potential for manipulation, 19 CFR 351.401(f)(2)(i), (ii), and (iii) are considered by Commerce in light of the totality of the circumstances; no one factor is dispositive in determining whether to collapse affiliated producers.[31]

In the *Final Results,* we examined each of these elements to determine whether the record supported treating Dalmine and Silcotub as a single entity, and explained why we disagreed with the petitioners' arguments that Dalmine and Silcotub should be treated as a single entity.[32] For these final results of redetermination, we have now also considered the petitioners' arguments

---

[29] *See, e.g.*, *Gray Portland Cement and Clinker from Mexico: Final Results of Antidumping Duty Administrative Review*, 63 FR 12764, 12774-75 (March 16, 1998); *see also Utility Scale Wind Towers from Malaysia: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 FR 56894 (October 13, 2021), and accompanying IDM at Comment 1.
[30] *See, e.g.*, *Nihon Cement Co., Ltd. v. United States*, Slip Op. 93-80 (CIT May 25, 1993); *see also Notice of Final Determination of Sales at Less Than Fair Value: Collated Roofing Nails from Taiwan*, 62 FR 51427, 51436 (October 1, 1997).
[31] *See Koyo Seiko Co., Ltd. v. United States*, 516 F.Supp.2d 1323, 1346 (CIT 2007) (citing *Light Walled Rectangular Pipe and Tube from Turkey; Notice of Final Determination of Sales at Less Than Fair Value*, 69 FR 53675 (September 2, 2004), and accompanying IDM at Comment 10).
[32] *See Final Results* IDM at 5-9.

relating to the collapsing decisions that they cited in their administrative case brief,[33] as well as any rebuttal comments submitted by Dalmine with respect to those arguments.

Specifically, in their resubmitted case brief, the petitioners argue that: (1) Dalmine and Silcotub have production facilities for identical merchandise that would not require substantial retooling to restructure their manufacturing priorities because both companies produce hollows that are used in the production of subject cold-drawn mechanical tooling; and (2) Commerce's regulations "expressly allow the collapsing of companies that have the capability to produce similar products."[34] To support this argument, the petitioners cite two decisions, one made in a circumvention inquiry related to the AD order on light-walled welded rectangular carbon steel tubing (LWRT) from Taiwan and another in the 2018-19 administrative review of the AD order on solar cells from China.[35] While the petitioners are correct that, under our regulations, Commerce may collapse companies producing similar or identical products, their reliance on these cases here is misplaced.

---

[33] Pursuant to 19 CFR 351.309(c)(2) "{t}he case brief must present all arguments that continue in the submitter's view to be relevant to {Commerce's} final determination or final results, including any arguments presented before the date of publication of the preliminary determination or preliminary results."

[34] *See* Petitioner's Comments and Case Brief Resubmission at Attachment 2 at 5-6.

[35] *See* Collapsing Memoranda at Attachments 3 (containing Memorandum, "Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or not Assembled into Modules, from the People's Republic of China: Affiliation and Collapsing Memorandum for Jinko Solar Import and Export Co., Ltd.," dated April 16, 2021 (Solar Cells from China) (public version)) and 5 (containing Memorandum, "Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan; Circumvention Inquiry – Preliminary Affiliation and Collapsing Memorandum," dated April 6, 2023 (LWRT from Taiwan)). The petitioners also cited a third decision in their Pre-Preliminary Comments (*see* Memorandum, "Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Mexico: Preliminary Collapsing Memorandum for Deacero Group," November 30, 2022). However, we have not addressed the petitioners' arguments in that submission here because the petitioners did not raise the argument in their administrative case brief and thus failed to exhaust their administrative remedies with respect to this issue. *See Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007); *see also Boomerang Tube LLC v. United States*, 856 F.3d 908, 912–13 (Fed. Cir. 2017) (citing *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016)).

Importantly, in both LWRT from Taiwan and Solar Cells from China, the entities at issue produced products which were within the scope of the orders/inquiry.[36] As Dalmine correctly notes, those facts stand in marked contrast to the facts in this review.[37] As we stated in the *Final Results*, Silcotub is located in Romania; thus, it is impossible for Silcotub to produce subject merchandise at all, much less for it to produce such merchandise "without substantial retooling." Namely, we explained:

> {W}e disagree with the petitioners that Silcotub is a producer of subject merchandise, or that it has the ability to produce such merchandise through minor alterations to its facilities. Silcotub is located in Romania, and its production operations are based there. Thus, Silcotub is unable to produce cold-drawn mechanical tubing which is subject to the *Order* (*i.e.*, subject merchandise, which has a country of origin of Italy); even if we were to treat Dalmine and Silcotub as a single entity, any cold-drawn mechanical tubing produced in Romania would not be subject to this proceeding.[38]

Thus, the consideration of these decisions does not alter our determination to not collapse Dalmine and Silcotub.

The petitioners also cite three collapsing/single entity decisions to support their position that there is significant potential for manipulation of price or production between Dalmine and Silcotub: (1) one made in the 2018-2020 administrative review of the AD order on common alloy aluminum sheet (aluminum sheet) from China;[39] (2) another made in the less-than-fair-

---

[36] *See* LWRT from Taiwan at 6 (stating that the entities both produced subject merchandise during the POI) and Solar Cells from China at 5 (stating that five of the six entities produced subject merchandise during the POR and that the sixth entity was a non-market economy exporter of subject merchandise). With respect to LWRT from Taiwan, we note that this decision was made within the context of a circumvention inquiry. Thus, Commerce found that the products produced in Vietnam were in-scope merchandise only as a result of its finding that the LWRT competed in Vietnam was circumventing the AD order on LWRT from Taiwan. *See Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 FR 77274 (November 9. 2023).
[37] *See* Dalmine Rebuttal Brief at 6.
[38] *See Final Results* IDM at 8.
[39] *See* Collapsing Memoranda at Attachment 4 (containing Memorandum, "Administrative Review of the Antidumping Duty Order on Common Alloy Aluminum Sheet from the People's Republic of China: Final Affiliation and Collapsing Memorandum," dated December 22, 2021(Aluminum Sheet from China)).

value investigation of the AD order on copper pipe from Vietnam;[40] and (3) a final one made in the 2017-2018 administrative review of the AD order on concrete reinforcing bar (rebar) from Mexico.[41] In particular, the petitioners argued that these decisions stand for the principle that Commerce makes its determinations based on the totality of the circumstances, and that, even were Commerce to find that Silcotub is not engaged in the production of subject merchandise, there still exists the potential for Dalmine to shift sales of subject merchandise through Silcotub.[42]

We agree that Commerce takes into account the totality of circumstances when making its determinations. However, again, the petitioners' reliance on the cited cases is misplaced. In fact, we addressed each of the arguments regarding significant potential for manipulation raised by the petitioners in the *Final Results*, stating:

> {I}n this review, we find that the potential for manipulation of price does not currently exist because: (1) Silcotub does not export, to the United States, Italian cold-drawn mechanical tubing produced by any other company than Dalmine; (2) Dalmine has fully reported Silcotub's downstream sales of Dalmine's cold-drawn mechanical tubing in its U.S. sales database, as required by section 772 of the Act; and (3) Silcotub does not have its own cash deposit rate (thereby creating the potential for the companies to export under the more advantageous of the two rates). We also find that the potential for manipulation of production does not exist because: (1) Silcotub is located in Romania and cannot produce subject merchandise or foreign like product; and (2) Dalmine fully reported all production-related transactions with Silcotub, and these transactions are subject to the special rules for affiliated party costs. Finally, as noted above, there is no evidence on the record that Dalmine and Silcotub have any overlap in management, nor is there any evidence that they have common members on their Boards of Directors or share facilities or employees, further limiting their ability to manipulate the price or production of cold-drawn mechanical tubing.[43]

---

[40] *Id.* at Attachment 2 (containing Memorandum, "Less-Than-Fair-Value Investigation of Seamless Refined Copper Pipe and Tube from the Socialist Republic of Vietnam: Affiliation and Single Entity Treatment Memorandum," dated January 26, 2021 (Copper Pipe from Vietnam)).
[41] *Id.* at Attachment 1 (containing Memorandum, "Affiliation and Collapsing Memorandum for Grupo Simec," dated January 9, 2020 (*Rebar from Mexico*)).
[42] *See* Petitioners' Comments and Case Brief Resubmission at 8, 11, and 16.
[43] *See Final Results* IDM at 9 (internal citations omitted).

With respect to *Rebar from Mexico* in particular, we disagree with the petitioners that Commerce's practice is to collapse entities based solely on overlapping ownership.[44] Rather, in that case, we also relied on the facts that: (1) "{a}ll nine companies operate production facilities which produce substantially the same product and merchandise under consideration during the POR"; and (2) "record evidence demonstrates a significant potential for manipulation of price and production among AEST, FUNACE, Operadora, Simec 6, Simec 7, Chant, Orge, Simec International, and Siderúrgicos because of their high degree of affiliation and similar production facilities for rebar."[45] As indicated above, here, Silcotub does not operate a facility that is capable of producing merchandise under consideration (*i.e.*, cold-drawn mechanical tubing with a country of origin of Italy). Thus, the facts in *Rebar from Mexico* are distinct and do not compel us to alter our analysis; when Commerce considered the totality of circumstances in the respective proceedings, it is unsurprising that we reached different conclusions due to the different record facts.

In summary, after considering the arguments by the petitioners related to the above-cited decisions, Commerce finds that none of these decisions compels us to alter our determination in the *Final Results*. Commerce considers the totality of circumstances and facts presented in each segment of a proceeding to determine whether to collapse entities. Therefore, after reconsideration and allowing the parties to submit NFI and associated arguments, Commerce continues to find that the record indicates that Dalmine and Silcotub are separate entities.

---

[44] *See* Petitioners' Comments and Case Brief Resubmission at 16.
[45] *See Rebar from Mexico* at 6.

### IV. FINAL RESULTS OF REDETERMINATION

Pursuant to the *Remand Order*, we have reconsidered our decision to reject certain documents, containing untimely NFI, from the record of this administrative review, and we have now accepted these submissions onto the record. After considering the rejected information, we find that no changes to the *Final Results* are warranted. If these final results of redetermination are affirmed by the Court, we will continue to treat Dalmine and Silcotub as separate entities.

12/19/2024

X _____

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance