NONCONFIDENTIAL

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ARCELORMITTAL TUBULAR PRODUCTS, *et al.*, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Court No. 24-00039 |
| UNITED STATES, ) ) | |
| Defendant, ) ) | |
| and ) ) | |
| DALMINE S.p.A., ) ) | |
| Defendant-Intervenor. ) ) | |

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR
JUDGMENT UPON THE AGENCY RECORD

R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP

Counsel to Plaintiffs ArcelorMittal
Tubular Products, Michigan
Seamless Tube, LLC, Webco
Industries, Inc., and Zekelman
Industries, Inc.

May 27, 2025

NONCONFIDENTIAL

## Table of Contents

Page

Argument ............................................................................ 2

I.   Defendant's Response Brief Relies Impermissibly on Post Hoc
     Rationale and Otherwise Fails to Demonstrate that the
     Department's Regulations Preclude Collapsing with an Affiliate
     Outside of the Subject Country ...................................................... 2

     A.   The Court Should Decline to Sustain the Remand
          Results Based on Post Hoc Rationale .................................... 2

     B.   Defendant's Arguments Are Inconsistent with the
          Agency's Rationale in the Final Results and Prior
          Decisions ................................................................ 7

II.  The Department's Failure to Collapse Dalmine and Silcotub Is
     Not Supported By Substantial Evidence ...................................... 18

III. Defendant Mischaracterizes the Remedy Sought by Plaintiffs .... 24

Conclusion ......................................................................... 30

Pursuant to the Court's rules, and consistent with Federal Circuit
Rule 25.1(e)(1)(B), this brief contains confidential material that has
been omitted on pages 28 and 29. The material omitted on pages 28
and 29 includes descriptions of Dalmine's production process and/or
sensitive commercial information that was reported and treated as
confidential on the record by U.S. Department of Commerce

NONCONFIDENTIAL

## Table of Authorities

Page(s)

### Cases

*Altx, Inc. v. United States*,
   167 F. Supp. 2d 1353 (Ct. Int'l Trade 2001)............................3-4, 21-22

*Atlantic Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ........................................................... 20

*Bonney Forge Corp. v. United States*,
   560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022)...................................21-22

*Bowen v. American Hospital Assn.*,
   476 U.S. 610 (1986)................................................................................7

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962)............................................................................5-6

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012)................................................................................7

*Coalition of American Millwork Producers v. United States*,
   581 F. Supp. 3d 1295 (Ct. Int'l Trade 2022)....................................... 19

*Dept. of Homeland Security v. Regents of the University of
   California*, 591 U.S. 1 (2020) .......................................................... 3, 7

*Dongkuk S&C Co., Ltd., v. United States*,
   548 F. Supp. 3d 1376 (Ct. Int'l Trade 2021)....................................5-6

*Diamond Sawblades Manufacturers Coalition v. United
   States*, 37 C.I.T. 1501 (2013) ........................................................ 4, 13

*Goodluck India Ltd. v. United States*,
   670 F. Supp. 3d 1353 (Ct. Int'l Trade 2023)..............................6, 15-16

*Huvis Corp. v. United States*,
   570 F.3d 1347 (Fed. Cir. 2009) .......................................................... 15

NONCONFIDENTIAL

*In re Section 301 Cases*,
  570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) .................................. 15, 16

*Koenig & Bauer-Albert Ag v. United States*,
  90 F. Supp. 2d 1284 (Ct. Int'l Trade 2000) ........................................ 27

*Michigan v. EPA*,
  576 U.S. 743 (2015) ................................................................................ 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Ins.*,
  463 U.S. 29 (1983) ............................................................................... 5-6

*New Am. Keg v. United States*,
  Appeal No. 20-00008, Slip Op. 2021-30,
  2021 Ct. Intl. Trade LEXIS 34 (Mar 23, 2021) ................................. 3-4

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 *(Fed. Cir. 2003)* ........................................................... 20

*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*,
  494 F.3d 1371(Fed. Cir. 2007) ............................................................. 16

*Ranchers–Cattlemen Action Legal Found. v. United States*,
  74 F. Supp. 2d 1353 (Ct. Int'l Trade 1999) .................................... 15-16

*S.E.C. v. Chenery Corp.*,
  318 U.S. 80 (1942) ................................................................................. 3

*Slater Steels Corp. v. United States*,
  297 F. Supp. 2d 1362 (Ct. Int'l Trade 2003) .................................. 4, 13

*Tabor v. Joint Bd. for Enrollment of Actuaries*,
  566 F.2d 705 (D.C. Cir. 1977) ............................................................... 3

*Timken Co. v. United States*,
  894 F.2d 385 (Fed. Cir. 1990) ............................................................... 3

*Ugine & ALZ Belg., N.V. v. United States*,
  517 F. Supp. 2d 1333 (Ct. Int'l Trade 2007) ........................................ 4

NONCONFIDENTIAL

*Viraj Forgings, Ltd. v. United States*,
    283 F. Supp. 2d 1335 (Ct. Int'l Trade 2003) ................................. 12-13

*Viraj Forgings, Ltd. v. United States*,
    350 F. Supp. 2d 1316 (Ct. Int'l Trade 2004) ................................. 12-13

## Statutes and Regulations

19 C.F.R. § 351.401(f) ........................................................................ 7-8

19 C.F.R. § 351.401(f)(1) ................................................................ 19, 20

19 C.F.R. § 351.401(f)(2) ............................................................ 20, 21, 22

19 C.F.R. § 351.401(f)(2)(ii) ............................................................ 18-19

19 C.F.R. § 351.401(f)(2)(iii) ........................................................... 21-22

19 U.S.C. § 1677(3) ............................................................................... 4

19 U.S.C. § 1677(16) ............................................................................. 4

19 U.S.C. § 1677(25) ........................................................................... 4,9

19 U.S.C. § 1677(28) .......................................................................... 4, 9

19 U.S.C. § 1677(29) ............................................................................. 4

19 U.S.C. § 1677b(a)(B) ......................................................................... 4

## Administrative Determinations

*Antidumping Duty Administrative Review of Crystalline
    Silicon Photovoltaic Cells, Whether or not Assembled into
    Modules, from the People's Republic of China: Affiliation
    and Collapsing Memorandum for Jinko Solar Import and
    Export Co., Ltd.* (Dep't Commerce April 16, 2021) .................... 16, 17

NONCONFIDENTIAL

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy:*
*Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 1,523 (Dep't Commerce Jan. 10, 2024) ("*Final Results*") and the accompanying *Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022* (Dep't Commerce Jan. 3, 2024)................................................. *passim*

*Final Results of Redetermination Pursuant to Court Remand* (Dep't Commerce Dec. 19, 2024) ("*Remand Results*")............... *passim*

*Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Malaysia* (Dep't Commerce Oct. 6, 2021) ("*Wind Towers from Malaysia IDM*"), *ref'd in Utility Scale Wind Towers From Malaysia: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 56,894 (Dep't Commerce Oct. 13, 2021) ................................................ *passim*

**NONCONFIDENTIAL**

On behalf of ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc. (collectively, "Plaintiffs" or "Petitioners"), we respectfully submit this Reply Brief, further in support of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Judgment Upon the Agency Record (ECF No. 52) (hereinafter "Pl. Br."). This reply brief responds to the arguments put forth in the Responses to Plaintiffs' Motion for Judgment on the Agency Record filed on behalf of the Defendant United States (ECF No. 58) (hereinafter "Def. Br.") and Defendant-Intervenor, Dalmine S.p.A. (ECF. No. 60) (hereinafter "Dalmine Br.").

For the reasons set forth in Plaintiffs' papers, Plaintiffs respectfully urge this Court to determine that the U.S. Department of Commerce's (the "Department" or "Commerce") final results, and subsequent remand results, in the fourth administrative review of the antidumping duty order on certain cold-drawn mechanical tubing of carbon and alloy steel ("CDMT" or "tubing") from Italy are not supported by substantial evidence and are not otherwise in accordance with law, and to remand the agency's determination for further proceedings. *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Final*

NONCONFIDENTIAL

On behalf of ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc. (collectively, "Plaintiffs" or "Petitioners"), we respectfully submit this Reply Brief, further in support of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Judgment Upon the Agency Record (ECF No. 52) (hereinafter "Pl. Br."). This reply brief responds to the arguments put forth in the Responses to Plaintiffs' Motion for Judgment on the Agency Record filed on behalf of the Defendant United States (ECF No. 58) (hereinafter "Def. Br.") and Defendant-Intervenor, Dalmine S.p.A. (ECF. No. 60) (hereinafter "Dalmine Br.").

For the reasons set forth in Plaintiffs' papers, Plaintiffs respectfully urge this Court to determine that the U.S. Department of Commerce's (the "Department" or "Commerce") final results, and subsequent remand results, in the fourth administrative review of the antidumping duty order on certain cold-drawn mechanical tubing of carbon and alloy steel ("CDMT" or "tubing") from Italy are not supported by substantial evidence and are not otherwise in accordance with law, and to remand the agency's determination for further proceedings. *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From Italy: Final*

NONCONFIDENTIAL

*Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 1,523 (Dep't Commerce Jan. 10, 2024) ("*Final Results*") (Appx1012-1013) and the accompanying *Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy; 2021-2022* (Dep't Commerce Jan. 3, 2024) ("*IDM*") (Appx1000-1011); *see also Final Results of Redetermination Pursuant to Court Remand* (Dep't Commerce Dec. 19, 2024) (ECF No. 44) ("*Remand Results*") (Appx7759-7769).

## Argument

I.  **Defendant's Response Brief Relies Impermissibly on *Post Hoc* Rationale and Otherwise Fails to Demonstrate that the Department's Regulations Preclude Collapsing with an Affiliate Outside of the Subject Country**

A.  **The Court Should Decline to Sustain the *Remand Results* Based on *Post Hoc* Rationale**

The essence of Defendant's argument is that a producer located outside of the country covered by an antidumping duty order cannot be considered a "producer of subject merchandise" and therefore is not subject to the Department's collapsing regulations. *See generally* Def. Br. at 17-35. Defendant claims that the statute, regulations, and case

NONCONFIDENTIAL

law all demonstrate that including a company in a non-subject country in a collapsing analysis is unlawful. *Id.* at 21-35.

The legal analysis put forth in Defendant's response brief is impermissible *post hoc* rationale not contained in the Department's *Remand Results*. "It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dept. of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).

The Court should not sustain the *Remand Results* based on rationale that the Department itself did not provide. As courts have held routinely, "{a}gency action cannot be sustained on *post hoc* rationalizations supplied during judicial review." *Timken Co. v. United States*, 894 F.2d 385, 389 (Fed. Cir. 1990) (citing *Tabor v. Joint Bd. for Enrollment of Actuaries*, 566 F.2d 705, 709-710 (D.C. Cir. 1977) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1942) (agency action "cannot be upheld merely because findings might have been made and considerations disclosed which would justify its order."))). While the Department need not address every piece of evidence on the record, "'it

must address significant arguments and evidence which seriously undermines its reasoning and conclusions.'" *New Am. Keg v. United States*, Appeal No. 20-00008, Slip Op. 2021-30 at 48, 2021 Ct. Intl. Trade LEXIS 34 at *48-49 (Mar 23, 2021) (quoting *Altx, Inc. v. United States*, 167 F. Supp. 2d 1353, 1374 (Ct. Int'l Trade 2001)).

Here, Defendant relies on various statutory provisions and case law not cited anywhere in the *Remand Results* to argue that the Department is prohibited by the terms of the statute and applicable regulations from including a company in a non-subject country in the collapsing analysis. *See* Def. Br. at 21-35 (citing 19 U.S.C. §§ 1677(3), (16), (25), (28), (29); 19 U.S.C. § 1677b(a)(B); *Ugine & ALZ Belg., N.V. v. United States*, 517 F. Supp. 2d 1333, 1345 (Ct. Int'l Trade 2007); *Slater Steels Corp. v. United States*, 297 F. Supp. 2d 1362, 1364-65 (Ct. Int'l Trade 2003); *Diamond Sawblades Manufacturers Coalition v. United States*, 37 C.I.T. 1501 (2013)). None of the legal analysis Defendant presents as supporting the *Remand Results* was provided by the Department. The lack of any legal analysis by the Department on this point is revealed by the single citation in Defendant's response brief to the *Final Results* (Def. Br. at 21 (citing Appx1007)), wherein the

NONCONFIDENTIAL

Department stated that "Silcotub is unable to produce cold-drawn mechanical tubing which is subject to the *Order* (i.e., subject merchandise, which has a country of origin of Italy); even if we were to treat Dalmine and Silcotub as a single entity, any cold-drawn mechanical tubing produced in Romania would not be subject to this proceeding," a statement that is unaccompanied by any citation to the law or the administrative record. Appx1007. Nowhere else does Defendant's analysis on pages 21 through 35 of its response brief cite to anywhere in the *Final Results* or *Remand Results* where the Department supplied the same legal basis for its determination. Indeed, nowhere in the *Final Results* or *Remand Results* does the Department cite any statutory or regulatory provision as providing a basis for its decision not to collapse Dalmine and Silcotub. *See* Appx1006-1008; Appx7763-7768.

The Department was required to provide in the *Remand Results* a complete explanation of the agency action and its failure to do so requires remand. "The court must reject this argument as it is a *post hoc* rationalization by agency counsel and does not reflect Commerce's rationale as set forth in the *Decision Memorandum*." *Dongkuk S&C Co.,*

NONCONFIDENTIAL

*Ltd., v. United States*, 548 F. Supp. 3d 1376, 1381-82 (Ct. Int'l Trade 2021) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Ins.*, 463 U.S. 29, 50 (1983) ("courts may not accept appellate counsel's post hoc rationalization for agency action.") (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))). That Defendant seeks to make these legal arguments now for the first time demonstrates that the *Final Results* and *Remand Results* as written are arbitrary and capricious. *Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353, 1368-69 (Ct. Int'l Trade 2023) ("Agency action is arbitrary and capricious when the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,' or made a decision 'so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'") (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

Requiring remand for a full explanation by the agency in this case is not a useless formality, particularly given the inconsistencies in the legal reasoning offered by the Department, as further discussed below.

NONCONFIDENTIAL

Moreover, the Supreme Court has found that such a requirement "promotes 'agency accountability,'" and "instills confidence that the reasons given are not simply 'convenient litigating position{s}.'" *Regents of the University of California*, 591 U.S. at 22-23 (quoting *Bowen v. American Hospital Ass'n*, 476 U.S. 610, 643 (1986); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)).

As a result, this Court should decline to sustain the *Remand Results* based on the *post hoc* rationale offered in the Government's brief that the Department itself did not provide in the *Final Results* or *Remand Results*, and it should remand the decision to the agency for further action.

### B. Defendant's Arguments Are Inconsistent with the Agency's Rationale in the *Final Results* and Prior Decisions

Defendant's arguments also fail because they are inconsistent with the rationale of the Department offered in the *Final Results* and *Remand Results*. The Department's regulations allow for the collapsing

NONCONFIDENTIAL

of one of more affiliated producers, stating as follows in 19 C.F.R. § 351.401(f)[1]:

> (1) {T}he Secretary will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and the Secretary concludes that there is a significant potential for the manipulation of price or production.
>
> (2) In identifying a significant potential for the manipulation of price or production, the factors the Secretary may consider include:
>
> > (i) The level of common ownership;
> >
> > (ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and
> >
> > (iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

Nowhere in the regulation does it state that a "producer" subject to the collapsing analysis must be located in the subject country, nor does it

---

[1] Plaintiffs rely on the 2021 version of 19 C.F.R. § 351.401(f) because that version was in effect during the underlying administrative review.

refer to "subject merchandise," instead referring to "similar or identical products." *Id.* Claiming that a producer located outside of the subject country is not subject to the Department's collapsing regulations, Defendant argues that the statute defines "producer" as the "producer of subject merchandise." Def. Br. at 22 (citing 19 U.S.C. §§ 1677(28), (25)). Defendant claims that Silcotub's location in Romania precludes it from being a "producer" of the "class or kind of merchandise that is within the scope" within the meaning of the statute. *Id.* at 22-23; *see also* Dalmine Br. at 23-24 (presenting the same argument).

There are several problems with this argument. First, aside from never being presented by the Department in the *Final Results* or *Remand Results* as a statutory reason not to collapse Dalmine and Silcotub, it is inconsistent with the Department's findings. In fact, Defendant's presentation of the statutory language as barring collapsing of Dalmine and Silcotub directly conflicts with the Department's rationale in the *Final Results* that its decision was fact-based rather than based on the interpretation of the regulation or statute. The Department explained that it was "mindful of the importance of this issue, however, and {} will revisit our decision in

NONCONFIDENTIAL

subsequent reviews if additional or new evidence is presented that would warrant reconsideration." Appx1008. Thus, the Department itself stated that it may in the future reconsider its decision not to collapse Dalmine and Silcotub if additional or new evidence is presented that alters its analysis. *See also* Appx7768 ("Thus, the facts in *Rebar from Mexico* are distinct and do not compel us to alter our analysis; when Commerce considered the totality of circumstances in the respective proceedings, it is unsurprising that we reached different conclusions due to the different record facts."). Thus, in the Department's words, it was reaching a determination based on facts and record evidence, not based on the law. *Id.* If there were a statutory bar to collapsing production facilities in two countries, the Department presumably could not reconsider its decision based on new facts. Defendant's new legal basis for defending the agency's decision therefore runs directly contrary to the rationale provided by the agency itself and thus is untenable.

Second, Defendant's legal argument that the Department is barred from including in the collapsing analysis a company located in a non-subject country is directly in conflict with past agency practice. In 2021,

NONCONFIDENTIAL

the Department did collapse across country lines in *Wind Towers from Malaysia*, collapsing a Malaysian producer with its Korean parent company that was located in Korea. *See Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Malaysia* (Dep't Commerce Oct. 6, 2021) at Comment 1 (hereinafter "*Wind Towers from Malaysia IDM*"), *ref'd in Utility Scale Wind Towers From Malaysia: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 56,894 (Oct. 13, 2021) (cited in Appx7655 at n.23). Defendant attempts to distinguish that case, again, using *post hoc* rationalization (*compare* Def. Br. at 28-30 *with* Appx7763-7768), by claiming that the Department collapsed the Korean parent company with the Malaysian producer because through a "tolling agreement" the Korean parent company controlled "'every aspect' of the price and production in Malaysia to such a degree that it was, itself, considered the producer of the subject merchandise in the country of the order." Def. Br. at 30; *see also* Dalmine Br. at 25-27.

In other words, Defendant argues, if the facts are strong enough to demonstrate a high degree of control, then a company in a non-subject

NONCONFIDENTIAL

country can be deemed a "producer of subject merchandise" and the alleged statutory bar to collapsing across country lines does not apply. That claim is inconsistent with the statutory prohibition argument. In fact, in *Wind Towers from Malaysia* the Department explicitly rejected the argument that it will not collapse affiliated companies where one or more of the companies is not a producer of subject merchandise and does not have a production facility in the subject country, the opposite of Defendant's position here. *Compare Wind Towers from Malaysia IDM* at p.3 (summarizing party's argument that the Department will not include a non-producer of subject merchandise in a collapsing analysis) *with* p.7 ("We disagree with the petitioner that Commerce should reach a different conclusion solely because CS Wind Corporation does not have a production facility in Malaysia and CS Wind Malaysia is the only producer in Malaysia."). Defendant's explanation of the Department's collapsing analysis in *Wind Towers from Malaysia* is inconsistent with its claim that the statute prohibits cross-border collapsing regardless of the facts. *See Viraj Forgings, Ltd. v. United States*, 350 F. Supp. 2d 1316, 1324 (Ct. Int'l Trade 2004) ("Commerce need not 'forever hew' to its prior decisions, but it must explain with

NONCONFIDENTIAL

specificity the reason for its departure from a prior practice.") (quoting *Viraj Forgings, Ltd. v. United States*, 283 F. Supp. 2d 1335, 1342 (Ct. Int'l Trade 2003)). Indeed, Defendant's portrayal of the scenario in *Wind Towers from Malaysia* reveals that the Department has collapsed two companies in different countries based on particular factual circumstances, and as recently as 2021, despite the claim on remand here that it is statutorily prevented from doing so.

Defendant cites *Slater Steels Corp. v. United States* for the proposition that "consolidating investigations and data across country lines for antidumping duty investigations is prohibited" (Def. Br. at 24-25 (citing 297 F. Supp. 2d 1362, 1364-65 (Ct. Int'l Trade 2003))) and *Diamond Sawblades Manufacturers Coalition v. United States* to argue that the court has held the Department's interpretation that it may not collapse across country lines is not unreasonable (*id.* at 25 (citing 37 C.I.T. 1501 (2013))). The Department's decision in *Wind Towers from Malaysia* was issued in 2021, subsequent to both court cases Defendant cites, and it refutes Defendant's contrary position that there is a legal bar to collapsing across country lines. Moreover, those cases also conflict with the agency's explanation in the *Final Results* that it may

NONCONFIDENTIAL

in the future reconsider its collapsing finding if new or additional evidence is presented. Appx1008. Thus, the Department has not identified a consistent interpretation of the statute that it now seeks to apply.

In reality, the arrangement that existed in *Wind Towers from Malaysia* is quite similar to the arrangement between Dalmine and Silcotub. The record demonstrates that from "an operational point of view, the Tenaris Groups companies, including Dalmine, Silcotub, TGS Uruguay, and TGS USA act like an integrated company using consolidated software, such as SAP, and procedures" (Appx1035), and that "Dalmine and Silcotub share significant sales information, with certain sales of subject merchandise during the POR made from Dalmine via Silcotub (and other affiliates) to unaffiliated U.S. customers." Appx1007, n.34 (internal citation omitted). Like in *Wind Towers from Malaysia*, the facts in this case rise to the level to demonstrate that collapsing is appropriate. *See also infra* Section II.

Defendant's new legal rationale conflicts with both the Department's underlying findings in the *Final Results* and the Department's approach in *Wind Towers from Malaysia*, which indicate that a decision

whether to collapse companies in different countries is not legally prohibited but is based on facts and evidence. Indeed, the underlying record and Defendant's brief indicate that the Department has acted inconsistently between cases with no reasoned explanation. *Goodluck India Ltd.*, 670 F. Supp. 3d at 1374 ("Agency action that deviates from prior policy decisions or established practice without reasoned justification is arbitrary and capricious.") (citing *Huvis Corp. v. United States*, 570 F.3d 1347, 1354 (Fed. Cir. 2009) (internal citations omitted)). To the extent that the earlier cases are evidence of a past practice, the reasoning in the *Final Results* and the Department's approach in *Wind Towers from Malaysia* represent an inconsistent approach. Given these divergent interpretations and applications of the statute and regulation, Defendant's claimed practice does not establish "the existence of 'a uniform and established procedure . . . that would lead a party, in the absence of notification of a change, reasonably to expect adherence to the established practice or procedure.'" *Goodluck India Ltd.*, 670 F. Supp. 3d at 1374 (citing *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1347 (Ct. Int'l Trade 2022) (quoting *Ranchers–Cattlemen Action Legal Found. v. United States*, 74 F. Supp. 2d 1353,

NONCONFIDENTIAL

1374 (Ct. Int'l Trade 1999)). The failure to differentiate the deviations between the reasoning in the *Final Results* and *Wind Towers from Malaysia* from the cases on which Defendant now relies is arbitrary and capricious. *Goodluck India Ltd.*, 670 F. Supp. 3d at 1368-69; *see also Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371, 1378 n.5 (Fed. Cir. 2007); *In re Section 301 Cases*, 570 F. Supp. 3d at 1347.

Third, Defendant's attempts to distinguish the other cases Plaintiffs cited in support of collapsing are unconvincing. Defendant argues that *Solar Cells from China* is distinguishable because in that case the non-producing entity was located in the subject country. Def. Br. at 26; *see also* Dalmine Br. at 28-29. While true, that case also undermines Defendant's narrow (and newly presented) reading of the statutory language as requiring that a producer subject to the collapsing regulation strictly be a "producer of subject merchandise." Indeed, *Solar Cells from China* is one example of a case where the Department included in the collapsed entity a non-producing exporter of subject merchandise. Appx7726 (Memorandum, "Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or not Assembled into Modules, from the People's Republic of

NONCONFIDENTIAL

China: Affiliation and Collapsing Memorandum for Jinko Solar Import and Export Co., Ltd.," dated April 16, 2021). In that case, the Department explicitly acknowledged that the regulation does not exclude parties that do not produce subject merchandise from the collapsing analysis, stating "although Commerce's regulations do not address the treatment of nonproducing entities (e.g., exporters), where non-producing entities are affiliated, and there exists a significant potential for manipulation of process and/or export decisions, Commerce has considered such entities, as well as other affiliated entities (where appropriate), as a single entity." *Id. Solar Cells from China* is another example of a case that undermines the strict statutory reading of "producer of subject merchandise" presented throughout Defendant's brief.

Defendant also attempts to distinguish *Carbon Steel Tubing From Taiwan* by claiming that collapsing decision was in the context of a circumvention inquiry. Def. Br. at 30-31; *see also* Dalmine Br. at 27-28. Although true that the Department's analysis in that case was completed pursuant to its circumvention authority, the relevant question under the collapsing regulation is whether producers have

-17-

NONCONFIDENTIAL

production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities such that the Department should collapse the two companies and solicit additional cost information from Silcotub. Although the ultimate finding in a circumvention proceeding may be different, the analysis of this regulatory factor, and the evidence deemed relevant to the Department's analysis, is the same and does not, by the terms of the regulation itself, require that both affiliates be located in the same country.

## II.    The Department's Failure to Collapse Dalmine and Silcotub Is Not Supported By Substantial Evidence

As a threshold matter, Defendant recognizes that that several, key collapsing criteria are satisfied, including that (1) Dalmine and Silcotub are wholly owned by the same company, (2) the two companies have significant transactions between them related to the production and sale of Italian cold-drawn mechanical tubing, (3) that Silcotub sells a major input to Dalmine for the production of subject merchandise, and (4) exports certain of the finished products to the U.S. market. Def. Br. at 35-36 (citing Appx1007-1008). Nevertheless, the Department found

NONCONFIDENTIAL

there is no overlap in management, no common Board members, no shared facilities or employees,[2] and no significant potential for manipulation of price of production. *Id.* at 36 (citing Appx1007; Appx1032).

With respect to 19 C.F.R. § 351.401(f)(1), as detailed in Plaintiffs' opening brief, the record contains various pieces of information, some confidential, demonstrating that both Dalmine and Silcotub conduct operations for the production of similar, and in some instances identical, merchandise and have production facilities that would not require substantial retooling to restructure their manufacturing facilities. *See* Pl. Br. at 22-29. Defendant's only response to this argument is to fall back on the claim that Silcotub cannot produce

---

[2]    Plaintiffs' opening brief explained that in other cases the Department has found no overlap in management, no common Board members, no shared facilities or employees under 19 C.F.R. § 351.401(f)(2)(ii), but nonetheless collapsed affiliated parties based on the fulfillment of the other regulatory factors. Pl. Br. at 33-34 (citing *Seamless Refined Copper Pipe and Tube from the Socialist Republic of Vietnam* (Appx7718-7719) and *Carbon and Alloy Steel Cut-to-Length Plate from Korea* (Issues and Decision Memorandum for the Final Results in the 2016-2018 Antidumping Duty Administrative Review at Comment 1 (Dep't Commerce Dec. 16, 2019), *ref'd in* 84 Fed. Reg. 70,951 (Dec. 26, 2019) (final results)); *see also Coalition of American Millwork Producers v. United States*, 581 F. Supp. 3d 1295, 1305-06 (Ct. Int'l Trade 2022). Thus, were the Department to conclude that the regulatory factors other than 19 C.F.R. § 351.401(f)(2)(ii) were met, it may find collapsing to be appropriate.

subject merchandise. Def. Br. at 33. That does not excuse the
Department from the requirement to consider all material evidence on
the record in reaching a decision. *See Nippon Steel Corp. v. United
States,* 337 F.3d 1373, 1379 (Fed. Cir. 2003) (citing *Atlantic Sugar, Ltd.
v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Indeed, the
entirely public nature of the *Remand Results* implies that the
Department did not consider the various pieces of confidential
information Plaintiffs cited demonstrating that the two affiliates have
overlapping production facilities for producing similar or identical
products that would not require substantial retooling of either facility.
*See e.g.,* Pl. Br. at 28-30. Had the Department properly considered the
additional, material record evidence demonstrating that Dalmine and
Silcotub conduct operations for the production of similar, and in some
instances identical, merchandise and have production facilities that
would not require substantial retooling to restructure their
manufacturing facilities, the only conclusion supported by the record is
that 19 C.F.R. § 351.401(f)(1) is satisfied.

 With respect to 19 C.F.R. § 351.401(f)(2), Defendant's explanation
again largely ignores the extensive record evidence Plaintiffs cited

NONCONFIDENTIAL

supporting the conclusion that there is a significant potential for manipulation or control. *Compare* Def. Br. at 34-39 *with* Pl. Br. at 35-40. Plaintiffs cited record evidence that the production facilities of Dalmine and Silcotub are thoroughly intertwined to produce subject merchandise (Pl. Br. at 36-37), the transferring of hollows and subject tubing transferred between Silcotub and Dalmine (*id.* at 37), confidential information regarding selling expenses (*id.*), logistical support services (*id.*), and Silcotub's performing of sales related administrative activities (*id.* at 38). Critically, the Department ignored the significant impact on the collapsing analysis of the fact that from "an operational point of view, the Tenaris Group companies, including Dalmine, Silcotub, TGS Uruguay, and TGS USA act like an integrated company using consolidated software, such as SAP, and procedures." Appx1035. Indeed, the Department ignored material evidence relating to the four elements listed in 19 C.F.R. § 351.401(f)(2)(iii), rendering its findings unsupported by substantial evidence.[3] *See* Pl. Br. at 39-40.

---

[3]    Although 19 C.F.R. § 351.401(f)(2) states that the factors the Department "may" consider in a collapsing analysis are those listed in subsections (i)-(iii), that discretion does not relieve the Department of its obligation to consider and weigh material record evidence that

(cont'd on next page)

Rather than consider the evidence cited by Plaintiffs, Defendant provides several unpersuasive reasons to support the conclusion that there is no significant potential for manipulation of price and/or production. Def. Br. at 36-39; *see also* Dalmine Br. at 30-35. First, Defendant claims that there is no significant potential for manipulation of price because Silcotub does not export CDMT to the United States by any company other than Dalmine so there are no additional export prices to report. Def. Br. at 36. Defendant next argues that Dalmine "has fully reported Silcotub's downstream sales" of CDMT and that because Silcotub does not have its own cash deposit there is no cause for concern above taking advantage of a different cash deposit rate. *Id.* at 36-37. Defendant also claims there is no significant potential for manipulation of production because Silcotub is located in Romania and cannot produce subject merchandise, and the Department applied the

---

supports or detracts from its analysis. *See Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1310 (Ct. Int'l Trade 2022) ("The Federal Circuit has thus found that the Court of International Trade properly remanded determinations when Commerce 'fail{ed} to consider all relevant arguments' made by the parties.") (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1119-20 (Fed. Cir. 2004)). The regulation simply indicates that the list of factors is, as Defendant notes, "non-exhaustive." Def. Br. at 34. The agency must still fulfill its obligation to render a decision that is supported by substantial record evidence.

"major input" rule by adjusting Dalmine's purchases of material inputs from Silcotub. Def. Br. at 38-39.

These claims miss the mark and highlight Defendant's, and the Department's, misunderstanding of the point of Plaintiffs' arguments. First, Plaintiffs are not, and have never, argued that Silcotub should have its own cash deposit rate, nor are Plaintiffs concerned about Silcotub's export prices. The basis of Plaintiffs' arguments in favor of collapsing have been to ensure that the Department's calculations capture all costs to produce CDMT exported from Dalmine to the United States and subject to the AD order. *See also infra* Section III. As discussed above and in Plaintiffs' opening brief, Dalmine reported that from "an operational point of view, the Tenaris Group companies, including Dalmine, Silcotub, TGS Uruguay, and TGS USA act like an integrated company using consolidated software, such as SAP, and procedures." Appx1035. The record also demonstrated that hollows and subject tubing transferred between Silcotub's and Dalmine's production facilities during the review period. Appx1030-1031; *see also* Appx1025. Accordingly, Plaintiffs urged the collection of full cost of production data from Silcotub allow the Department to determine the full cost of

NONCONFIDENTIAL

Dalmine and Silcotub as "an integrated company," rather than to compare the market price of Silcotub's hollows to the average per-unit cost of production. Appx3240-3241. Thus, Defendant's attempts to explain why the potential for manipulation does not exist here miss the mark, as Plaintiffs explained repeatedly that the integrated nature of Dalmine's and Silcotub's operations necessitate the collection of full cost data to ensure that cost-shifting does not occur and that the cost to produce CDMT exported from Dalmine is fully captured in the Department's analysis and calculations.

*    *    *

In sum, had the Department considered all relevant, material evidence on the record, in addition to the evidence underlying its finding that "certain elements necessary for single entity treatment are present in this proceeding," the only decision supported by substantial evidence is to collapse Dalmine and Silcotub.

## III.   Defendant Mischaracterizes the Remedy Sought by Plaintiffs

Relevant to Defendant's claim that there is no significant potential for manipulation of price or production is its misunderstanding of the remedy sought by Plaintiffs.

NONCONFIDENTIAL

At the outset of this administrative review, five months prior to the *Preliminary Results*, Plaintiffs raised the issue of collapsing to the Department and urged the Department to require Dalmine to "report all of Silcotub's costs and sales as a collapsed entity," including "reporting the CONNUM-specific manufacturing costs for Silcotub's hollows," "Silcotub's production process for subject and non-subject merchandise," and "Silcotub's costs and sales reconciliations." Appx3240-3241. As explained, this would allow the Department to determine the full costs of Dalmine and Silcotub as "an integrated company," rather than to compare the market price of Silcotub's hollows to the average per-unit cost of production. *Id.* The Department ignored this request. Plaintiffs again raised this request prior to the *Preliminary Results*, and again during administrative briefing prior to the *Final Results*, urging the Department to require Dalmine to report Silcotub's cost of production for the hollows transferred to Dalmine. Appx7638; Appx7663. The Department has never squarely addressed Plaintiffs' request to collect Silcotub's full cost of production data, not in the *Preliminary Results*, *Final Results*, nor *Remand Results*.

NONCONFIDENTIAL

Despite Plaintiffs' clear request for reporting of Silcotub's cost of production during this administrative review, Defendant now claims that (1) "Plaintiffs are attempting to achieve the remedy of a second antidumping duty order (presumably on Romanian CDMT) or circumvention proceeding" (Def. Br. at 33), (2) "Commerce adequately accounted for the manufacturing costs of Silcotub's input, adjusting such costs to the market price – which is higher than the production costs – because the parties are affiliated" (*id.* at 39), (3) there are no additional export prices from Silcotub to report that are not already included in the Department's calculations (*id.* at 36), and (4) there is no concern or incentive for a party to use a more advantageous cash deposit rate (*id.* at 37).

None of these claims is true. Plaintiffs have been consistent and straightforward throughout this proceeding that their request is only for the Department to collect full cost of production data from Silcotub. Neither Defendant nor the Department ever addresses the argument that Plaintiffs raised repeatedly as to why the collapsing finding is material to the dumping calculation in this review: simply that

NONCONFIDENTIAL

Silcotub's full cost of production should be captured in the dumping analysis because Silcotub and Dalmine act as an "integrated" company.

Nor is Defendant correct that Plaintiffs' request for Silcotub to report its cost of production data has no basis in the law. Def. Br. at 44-45. The court has recognized the standard of cost reporting for a collapsed entity is higher and more detailed than the standard of reporting for affiliated entities. *See Koenig & Bauer-Albert Ag v. United States*, 90 F. Supp. 2d 1284, 1290 (Ct. Int'l Trade 2000) ("As described by Commerce, 'collapsing, as it relates to computing COP, is a specific rule dealing with whether the Department should include facilities owned by an affiliate in its weighted-average, CONNUM-specific COP computation.'") (citation omitted). Because the reporting standards different for affiliated versus collapsed entities, Defendant is wrong that all necessary costs are accounted for on the record. Def. Br. at 44-45; *see also* Dalmine Br. at 37-38 (arguing that the record is not missing data).

Indeed, Defendant implies that by applying the major input rule and relying on market price instead of the cost of production that "cost reconciliations are unnecessary." Def. Br. at 45. If that were true, then there would never be a need for the Department to collapse two

-27-

**CONFIDENTIAL
MATERIAL OMITTED**                    NONCONFIDENTIAL

affiliated entities, regardless of the level of control or manipulation, and the collapsing regulation would be futile. At the same, Defendant's argument concedes that the Department did not require a full reconciliation of the costs of the entire production line, including Silcotub's, that such a higher reporting standard would have included additional reporting such as cost reconciliations. The Department specifically recognized the different reporting requirements for affiliated versus collapsed entities in *Wind Towers from Malaysia* when analyzing prior agency decision, stating that "as in this case, because Commerce found that FerroVen and FASA should be treated as a single entity, Commerce did not apply the major input rule, which only applies to transfers between affiliates rather than transfers within a single entity." *Wind Towers from Malaysia*, Comment 1 at p.8.

Here, Dalmine reported that "the total manufacturing costs for all CONNUMs fully capture the [         *production process*

], as recorded in Dalmine's normal accounting system." Appx2953. In other words, the cost of production [

*production process*          ] a calculated cost per product with a reconciliation to Silcotub's internal cost reporting. Given that Silcotub's

**CONFIDENTIAL**
**MATERIAL OMITTED**                  NONCONFIDENTIAL

[        *production process*        ] Dalmine's cost of production, Silcotub's ability to influence, manipulate, or even control the cost of production of subject merchandise satisfied the Department's regulatory standards for collapsing and, thus, Silcotub should have been subject to a heightened level of scrutiny as a collapsed entity, including, but not limited to, cost reconciliations.

Thus, the record is missing key data as a result of the Department's decision not to collapse Dalmine and Silcotub. Although neither the *Final Results* nor the *Remand Results* fully acknowledge the data collection shortcomings, the Department found that collapsing was not necessary because "Dalmine fully reported all production-related transactions with Silcotub, and these transactions are subject to the special rules for affiliated party costs." Appx1008. That is true of reporting for affiliated parties, however, collapsed parties are subject to a higher, more detailed standard of cost of production reporting. The Department's failure to collect full cost of production data from Silcotub leaves a material gap in the record.

NONCONFIDENTIAL

## Conclusion

For the reasons discussed above, Plaintiffs respectfully urge this Court to find that the Department's *Final Results* and *Remand Results* are not supported by substantial evidence and not otherwise in accordance with law. Plaintiffs urge this Court to remand the *Remand Results* to the Department with instructions to correct the errors set forth above.

Respectfully submitted,

/s/ Melissa M. Brewer
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Plaintiffs

Dated: May 27, 2025

CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES

Pursuant to this Court's Amended Scheduling Order dated February 14, 2025 (ECF No. 51), setting the word limitation to the reply brief of Plaintiffs, ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, Webco Industries, Inc., and Zekelman Industries, Inc., to 7,000 words, counsel for Plaintiffs certifies that this Reply Brief contains 5,817 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Enterprise – 365.

Respectfully submitted,

/s/ Melissa M. Brewer
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Plaintiffs ArcelorMittal
Tubular Products, Michigan
Seamless Tube, LLC, Webco
Industries, Inc., and Zekelman
Industries, Inc.

Dated: May 27, 2025