Slip Op. 25-121

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

Court No. 24-00039

ARCELORMITTAL TUBULAR PRODUCTS;
MICHIGAN SEAMLESS TUBE, LLC;
WEBCO INDUSTRIES, INC.; and
ZEKELMAN INDUSTRIES, INC.,

*Plaintiffs*,

v.

UNITED STATES,

*Defendant*,

and

DALMINE S.p.A.,

*Defendant-Intervenor.*

Before: M. Miller Baker, Judge

## OPINION

[The court sustains Commerce's determination not to collapse two affiliated entities for purposes of 19 C.F.R. § 351.401(f)(1) (2016).]

Dated: September 15, 2025

*R. Alan Luberda* and *Melissa M. Brewer*, Kelley Drye & Warren LLP, Washington, DC, on the briefs for Plaintiffs.

**Ct. No. 24-00039** Page 2

*Yaakov M. Roth*, Acting Assistant Attorney General; *Patricia M. McCarthy*, Director; *Claudia Burke*, Deputy Director; and *Geoffrey M. Long*, Acting Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the brief for Defendant. Of counsel for Defendant was *Danielle Cossey*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*Gregory J. Spak*, *Kristina Zissis*, *Luca Bertazzo*, and *Matthew W. Solomon*, White & Case LLP, Washington, DC, on the brief for Defendant-Intervenor.

*Baker*, Judge: This case involving an administrative review of an antidumping order on mechanical tubing from Italy returns after voluntary remand. The petitioners in the original investigation, a group of American manufacturers, challenge the Department of Commerce's redetermination not to collapse a mandatory respondent with its Romanian affiliate for purposes of calculating the former's dumping margin. Because the law compelled that result, the court sustains it.[1]

---

[1] In so doing, the court declines to redact certain confidential record material that it finds does not qualify as "business proprietary information" under the applicable Commerce regulation, 19 C.F.R. § 351.105(c). *See* 19 U.S.C. § 1516a(b)(2)(B) (providing that the court "shall . . . preserve[] in any action under this section" the "confidential or privileged status accorded to any documents, comments, or information," except that it "may disclose such material under such terms and conditions as it may order").

Ct. No. 24-00039 Page 3

I

During an antidumping investigation or review, the Department may treat "affiliated companies" as "one entity" for purposes of calculating a single dumping margin, called "collapsing." *Koenig & Bauer-Albert AG v. United States*, 90 F. Supp. 2d 1284, 1286 (CIT 2000); *see also* 19 U.S.C. § 1677(33) (defining "affiliated persons"). The purpose of this exercise is to ensure Commerce reviews the activities of the entire producer or exporter and to prevent connected entities from circumventing duties "by channeling production of subject merchandise through the affiliate with the lowest potential dumping margin." *Coal. of Am. Millwork Producers v. United States*, 581 F. Supp. 3d 1295, 1303 (CIT 2022).

Under the regulation in effect during the period of review here,[2] Commerce collapses "two or more affiliated producers" when it finds that two conditions are satisfied. 19 C.F.R. § 351.401(f)(1) (2016). First, the relevant entities must "have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities." *Id*. Second, there must be "a significant potential for the manipulation of price or production." *Id*.[3]

---

[2] The Department has since amended the regulation. *See* 19 C.F.R. § 351.401(f)(1) (2025).

[3] To determine whether there is such a potential, the agency "may" consider several non-exhaustive factors. *See id*. § 351.401(f)(2)(i)–(iii); *see also* 62 Fed. Reg. 27,296, 27,345.

II

This case stems from an order imposing antidumping duties on cold-drawn mechanical tubing from Italy. *See* 83 Fed. Reg. 26,962. In 2022, Commerce opened its fourth administrative review of this decree covering June 1, 2021, to May 31, 2022. 87 Fed. Reg. 48,459, 48,462. It selected Dalmine, S.p.A., an Italian producer, as the sole mandatory respondent. *See* Appx1000.

In its initial questionnaire response, the company reported that it manufactured subject merchandise using inputs made by Silcotub, its Romanian affiliate. Appx1030. It noted that both entities are subsidiaries of the same parent, Tenaris, and that they operate "like an integrated company using consolidated software . . . and procedures." Appx1035. Dalmine further stated that it sold its products in the United States directly and through Silcotub, which would purchase the product from the former, cut the tubing to length, then resell it to American customers. Appx1024–1025.

The petitioners then urged the Department to collapse the two Tenaris affiliates. Appx3237–3241. In its preliminary determination, Commerce declined to do so. Instead, for purposes of calculating Dalmine's cost of production, it adjusted the cost of inputs purchased from Silcotub under the major-input rule. Appx7519.[4] This had the effect of reducing the Italian producer's

---

[4] Rather than take the asserted value of such inputs from affiliated parties on faith, Commerce uses this rule to establish a price. *See* 19 U.S.C. § 1677b(f)(3); *see also* 19 C.F.R. § 351.407(b).

preliminary margin over what it would have been had the agency granted petitioners' request.

In its final determination, the Department again declined to collapse the Tenaris entities.[5] In so doing, it acknowledged that certain requirements for collapsing were "present" here, "including . . . that Dalmine and Silcotub are affiliated, and that [the latter] both sells a major input necessary to the production of subject merchandise to [the former] and exports . . . the finished products to the United States." Appx1008. But the agency found the petitioners did not establish two of the essential elements under 19 C.F.R. § 351.401(f)(1).

First, because "Silcotub is located in Romania" and the order applies to tubing from Italy, the company was "unable" to produce subject merchandise at all, let alone "through minor alterations to its facilities." Appx1007. Second, there was no "significant potential for manipulation" of price or production. Appx1008.[6] Thus, the agency declined to collapse the two com-

---

[5] Earlier, the agency rejected certain information proffered by both the petitioners and Dalmine. *See, e.g.*, Appx7550–7552; Appx7576–7577.

[6] As to this element, the Department gave several reasons, including that was no evidence on the record indicating Dalmine and Silcotub have "any overlap in management" or "common members on their Boards of Directors," or that they "share facilities or employees," which "limit[s] their ability to manipulate the price or production" of the tubing. *Id.*

Ct. No. 24-00039 Page 6

panies. *Id.*[7] For that and other reasons, it ultimately assigned Dalmine a dumping margin of two percent. Appx1012.

After the petitioners sued to challenge that determination, the government moved for a voluntary remand. ECF 40. It explained that Commerce wished to reconsider both its rejection of the proffered materials as well as the merits. *Id.* at 7–8. The court granted the motion. ECF 41.

The Department reopened the record and accepted the material that it had previously rejected. *See* Appx7760. After considering that information, it reaffirmed its original decision not to collapse Dalmine with Silcotub for purposes of the regulation. *Id.*

As to whether the companies could produce "similar or identical products . . . [without] substantial retooling," 19 C.F.R. § 351.401(f)(1), the agency again found that the Romanian manufacturer could not "produce subject merchandise at all, much less . . . produce such merchandise 'without substantial retooling.'" Appx7766. Commerce distinguished two prior agency decisions invoked by the petitioners, explaining that the entities in those proceedings made "products which were within the scope of the orders/inquiry." *Id.*

---

[7] In view of what it characterized as "the importance of this issue," however, the Department pledged to "revisit [its] decision in subsequent reviews if additional or new evidence is presented that would warrant reconsideration." *Id.*

And regarding whether there was significant potential for manipulation of price or production, the Department again found none. Appx7767. Commerce quoted its initial decision for the proposition that "there is no evidence on the record" of management or board of directors overlap, or of any sharing of "facilities or employees." *Id.*; *cf.* 19 C.F.R. § 351.401(f)(2)(ii), (f)(2)(iii).

### III

Invoking jurisdiction conferred by 28 U.S.C. § 1581(c), petitioners sued under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(i). ECF 8, at 1. Dalmine intervened on the side of the United States. Upon return from voluntary remand, the parties fully briefed petitioners' motion for judgment on the agency record, which is ripe for disposition.

In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

### IV

The petitioners argue that "Commerce misreads the regulation by imposing a heightened standard for collapsing two entities that does not exist in the regulatory language." ECF 54, at 22. They contend that nothing in the version of 19 C.F.R. § 351.401(f)(1) in effect during the period of review requires that "both affiliated parties must be located in the subject country or produce [covered] merchandise to be treated as

a collapsed entity." *Id*. They further observe, correctly, that "the Department cite[d] no authority to support its claim that Silcotub's location in Romania disqualifies it from being collapsed with Dalmine." *Id*. at 22–23.

The government responds that the regulation limits collapsing to "two or more affiliated *producers*." ECF 59, at 22 (emphasis in original) (citing 19 C.F.R. § 351.401(f)(1) (2016)). It observes that the statute, in turn, defines "producer" as a "producer of subject merchandise," meaning the "class or kind of merchandise that is within the scope" of an antidumping duty order. *Id*. (quoting 19 U.S.C. §§ 1677(28), (25)). It notes that "it is well-established that subject merchandise is determined by the product type as well as the country of origin." *Id*. (citing *Ugine & ALZ Belg., N.V. v. United States*, 517 F. Supp. 2d 1333, 1345 (CIT 2007)); *see also Canadian Solar, Inc. v. United States*, 918 F.3d 909, 913 (Fed. Cir. 2019) (stating that Commerce's practice is to describe a product "within the scope" of an order by reference to its "technical characteristics" and "country of origin"). Thus, according to the government, Romanian-based Silcotub cannot produce subject merchandise "and is not a 'producer' within the meaning of 19 C.F.R. § 351.401(f)(1)." ECF 59, at 22–23.[8]

---

[8] The government also observes that this understanding of "producers" as only those entities making subject merchandise is harmonious with statutory definitions of key terms in antidumping law, including foreign like product, normal value, and the dumping margin. *Id*. at 23–24 (citing

(footnote continues on next page)

**Ct. No. 24-00039**                                                  **Page 9**

On reply, the petitioners do not contest the government's statutory argument, which is unimpeachable. Instead, invoking *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), they rail against the government for supplying a "rationale that the Department itself did not provide." ECF 63, at 3. Under this teaching, "courts may not accept . . . counsel's *post hoc* rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962).

But the *Chenery* doctrine does not apply when "the sole issue is one of statutory construction," for that "is not 'a determination or judgment which an administrative agency alone is authorized to make.'" *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1101 (Fed. Cir. 1996) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Where "the plain language of the statute compels" agency action, that interpretation "does not require or implicate the exercise of . . . discretion in applying subtle and complex statutory standards to particular facts." *Id*. The court can rely on such a clear legal command to affirm on an "alternative ground" not articulated by the agency. *Id.*; *see also Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 554 U.S. 527, 545 (2008) (where the law requires an agency to take a particular

---

19 U.S.C. §§ 1677(16), 1677b(a)(1)(B)(i), and 1677(29), respectively).

Ct. No. 24-00039                                         Page 10

action, "[t]hat it provided a different rationale for the necessary result is no cause for upsetting its ruling").

Here, the statute's plain language precluded Commerce from collapsing Silcotub with Dalmine because the former company, based in Romania, was not a "producer" of subject merchandise for purposes of 19 C.F.R. § 351.401(f)(1). *See* 19 U.S.C. §§ 1677(28), (25). This indisputable proposition renders *Chenery* inapplicable and provides an alternative ground to sustain the Department's decision not to collapse these entities.

The petitioners complain that this alternative legal rationale is inconsistent with the Department's arguably "fact-based" conclusion. *See* ECF 63, at 9–10 (citing the agency's statement that it would revisit its "decision in subsequent reviews if additional or new evidence is presented that would warrant reconsideration," Appx1008). But this "is no cause for upsetting its ruling," as "remand would be an idle and useless formality." *Morgan Stanley*, 554 U.S. at 545. And insofar as this rationale is incompatible with past agency practice as the petitioners also charge, *see* ECF 63, at 10–18, that is also no reason to remand. Commerce has no discretion to ignore a statute. Nor may it disregard its own regulations. *See Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) ("[A]n agency is bound by its own regulations.") (citing *Service v. Dulles*, 354 U.S. 363, 388 (1957)). Inasmuch as its previous determinations suggest that it may collapse "two or more affiliated *producers*" where one of them does not

Page 11

make subject merchandise,[9] 19 C.F.R. § 351.401(f)(1) (emphasis added), the problem is with those rulings, not with the agency's belated decision to follow the law.

The statute and regulation compelled the Department's redetermination here.[10] The court accordingly sustains it and denies petitioners' motion for judgment on the agency record (ECF 54). A separate judgment will enter. *See* USCIT R. 58(a).

Dated:  September 15, 2025         /s/ *M. Miller Baker*
        New York, NY                Judge

---

[9] Although the government and Dalmine dispute the petitioners' characterization of those rulings, there is no need for the court to resolve that disagreement.

[10] It is thus unnecessary to consider the petitioners' challenge to the agency's finding that there was no "significant potential for the manipulation of price or production." 19 C.F.R. § 351.401(f)(1).